Alice **KALLSTROM** and Ronald **Kallstrom,** Plaintiffs and Appellees,

v.

**MARSHALL BEVERAGES, INC.** and **Robert B. Marx,** Defendants and Appellants.

Nos. 15279, 15284.

Supreme Court of South Dakota.

Argued Oct. 22, 1986.

Decided Dec. 17, 1986.

Karen Gangle, Sisseton, for plaintiffs and appellees.

Danny R. Smeins of A. William Spirey Law Office, Britton, for defendants and appellants.

WUEST, Chief Justice.

Appellants appeal from an amended judgment of specific performance in favor of the appellees which ordered the appellants, as buyers, to make obligated payments under a contract for the sale of real estate. Affirmed in part, reversed in part, and remanded to the trial court.

Appellees, Ronald and Alice Kallstrom (Kallstroms) were owners and operators of K & K Resort on the west side of Lake Traverse in Roberts County, South Dakota. Appellant Robert B. Marx (Marx), an officer of appellant Marshall Beverages, Inc. (Marshall Beverages), approached Kallstroms about selling their regular liquor license, Sunday liquor license, and beer license to Marshall Beverages. Marx wanted the liquor licenses for his own place of business, because under state law, the County Commissioners could only issue seven liquor licenses in Roberts county. Since seven were already issued, Marx needed to acquire an existing license and have the Commissioners approve its transfer to his business. Kallstroms would not agree to a sale of the licenses only but did indicate their willingness to sell the entire

business, including liquor licenses, real estate, and certain personal property.

Prior to execution of any purchase agreement the Kallstroms showed Marx the boundaries to the resort property. They also provided Marx with a 1983 property tax receipt to help Marx in preparing a purchase agreement. Although the receipt contained a legal description of the property, it did not actually indicate the number of acres involved. The Kallstroms did not know how many acres were included in the property and so advised Marx, who indicated that he could discover that information at the courthouse. Marx prepared a purchase agreement which gave a legal description of the property and listed the parcel as 4.9 acres. Marx has never explained where he obtained the 4.9 acre figure, which later proved to be incorrect.

The purchase agreement was executed on May 24, 1984, in which Kallstroms agreed to sell and Marshall Beverages agreed to buy the property known as K & K resort, including real estate, cabins, itemized equipment, and related liquor licenses. The purchase price was $30,000, with $1,500 payable upon execution of the contract, $13,500 upon transfer approval of the liquor licenses and delivery of a warranty deed, and a promissory note for $15,000, including interest, to be paid in fifty-nine monthly installments of $250 and a final balloon payment of $5,574.95. The promissory note was secured by the personal property by separate contract. The contract further included a cancellation or windup clause which provided for the buyer's right to cancel the agreement and demand the sellers return the earnest money as adjusted by any used fair rental value of the property upon the sellers failure to provide a warranty deed, title insurance, abstracts of title, or transfer of the liquor licenses. Appellants took immediate possession of the property.

On August 14, 1984, the Roberts County Board of Commissioners (Commissioners) approved the transfer of the plaintiffs' regular liquor license to the defendants. Sometime before August 14 the appellants discovered the K & K Resort property only amounted to three acres and not the 4.9 acres provided in the contract when Kallstrom's bank furnished an abstract of the property directly to the appellants which stated the acreage to be 3 acres. Later, on August 17, rather than advise the Kallstroms of this error, or attempt to call off the agreement, the appellants pursued closing, tendered $13,500, and accepted a warranty deed from the Kallstroms with the proper legal description without any statement as to acreage. This deed and the closing papers were prepared by appellant. At the same time, they delivered their note for $15,000, secured by the personal property, for the balance of the purchase price. Subsequently, the Commissioners notified the appellants on August 28 that approval of the Sunday liquor license would require their operation evidence that 50% of gross sales were derived from the sale of food for a period of at least 90 days. Since the appellant intended to use the license at another location which had not yet begun operations, he was unable to meet those requirements.

On November 1, 1984, appellants notified Kallstroms they were cancelling the contract under the windup clause because the Kallstroms did not deliver a full 4.9 acres of real property and because transfer of the Sunday liquor license had not been accomplished. On December 18, 1984, the Kallstroms commenced an action against appellants seeking specific performance of the purchase agreement, or in the alternative money damages. The appellants counterclaimed for rescission and in the alternative, damages for breach of the purchase agreement.

Following a July 8, 1985 trial on the issue of specific performance, the trial court ruled that until appellants submitted a proper application for the Sunday liquor license to the Commissioners, the request for specific performance was not ripe for decision. Thereafter, the proper request was filed, and appellants received the Sunday license on July 23, 1985. Kallstroms renewed their request for specific perform-

ance which was granted. This appeal followed.

■ Kallstroms claim the appellants failed to properly perfect their appeal within sixty days under SDCL 15–26A–6. "An appeal must be taken within sixty days after the judgment shall be signed, attested, filed and *written notice of entry* thereof shall have been given to the adverse party." (Emphasis added.) SDCL 15–26A–6. The trial record is devoid of notice of entry. Kallstroms attorney mailed a letter and copies of the trial court's judgment and decree which was intended as notice by mail upon appellants. However, there was no certificate of service or filing with the Clerk of Courts. Without a written notice of entry, the sixty days do not commence to run.

The first paragraph of SDCL 15–26A–6 is identical to former SDCL 15–26–2 (repealed 1980). *See* SDCL 15–26–2 (repealed 1980), SL 1976, ch. 149, § 2. This court explained the importance of a notice of entry of judgment as required in the former SDCL 15–26–2 in *People In Interest of T.C., Etc.*, 278 N.W.2d 452 (S.D.1978).

A notice of entry of judgment gives to a party the power to set running the time after which his adversary may not appeal and assures each party that the statutory period of time within which he may appeal does not commence to run until his adversary has given such notice.

Since the statutory period did not commence due to Kallstrom's failure to provide written notice of entry under SDCL 15–26A–6, the motion to dismiss is denied.

■ Appellants argue they are entitled to enforcement of the windup clause, or in the alternative, rescission of the contract. We disagree. The windup clause provided the buyers had an option to cancel the land sale contract in the event the sellers were not able to provide a warranty deed to the subject property, transfer the liquor licenses, provide title insurance, or provide an abstract of title. The appellants notified the Kallstroms on November 1, 1984, that they were exercising their rights under the windup clause because of a delay experi-

enced in receiving the Sunday liquor license and because of a deficiency of 1.9 acres. The problems the appellants had in getting the licenses transferred cannot be a basis for now enforcing the windup clause. First, it is immediately obvious that under existing law, the transfer of the liquor licenses was a matter for the Commissioners to decide, and the appellants knew this. The Kallstroms could only surrender their interest in the liquor licenses. Second, the transfer of the regular liquor license was approved on August 14, 1984. Although payment of $13,500 was conditioned on the transfer of the Sunday license as well, rather than await the transfer of the Sunday license the appellants made payment when they received the regular license. If actual transfer of all licenses was a necessary precondition for appellants performance, appellants waived that precondition when they tendered payment. Third, the Commissioners' approval of the transfer of the Sunday license was withheld during the latter months of 1984 while awaiting proof from the appellants that 50% of their establishment's income was derived from food sales. Any delay was caused by the appellants' noncompliance and they should not profit by their own failure to comply with the three-month requirement. Fourth, the Sunday license transfer has been accomplished.

■ Appellants argue that the windup clause should be enforced because while the contract called for the transfer of 4.9 acres, the K & K Resort in fact contained only 3 acres. The evidence is clear that Marshall Beverages purchased the resort primarily to obtain the liquor licenses. The amount of acreage was incidental to their purpose in obtaining the licenses. Even if the number of acres in lakeside property were a controlling reason for Marshall Beverages entering the agreement, the facts show that the acreage deficiency was waived by the defendants when they accepted the warranty deed with full knowledge that the premises contained only three acres.

A waiver exists 'where one in possession of any right, whether confirmed by law or contract, and with full knowledge of the material facts, does or forbears something inconsistent with the existence of the right or of his intention to rely on it'.

*Western Cas. & Sur. Co. v. American Nat. Fire Ins. Co.*, 318 N.W.2d 126 (S.D. 1982).

■ Appellants further claim the acreage deficiency is a mutual mistake of fact constituting equitable grounds for rescission of the contract. We hold the appellant also waived any claim for rescission.

■ Appellants also claim the Kallstroms had an adequate remedy at law since the only portion of the purchase agreement yet unperformed is the installment payments due on the $15,000 note secured by the personal property. Neither party has analyzed the legal status correctly. The contract has been performed. The abstract was furnished, the deed delivered, the licenses transferred and the purchase price paid. What remains is payment of the note for $15,000, secured by the personal property and payable in installments as provided by the purchase agreement. There is nothing left for specific performance. The Kallstroms have a remedy at law to sue on the note. However, the Kallstroms did sue in the alternative for damages. Rather than granting specific performance, the trial court should have awarded damages for the unpaid balance due on the note. Although it may be more a matter of form than substance, the matter is remanded back to the trial court for the purpose of entering the appropriate judgment.

By notice of review, the appellees claim the trial court erred in refusing to award them attorney fees. We agree with the trial court. SDCL 15–17–6.

All the Justices concur.

FOSHEIM, Retired J., participating.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.