**PAN AM WORLD SERVICES, INC.,**
**Plaintiff–Appellee–Cross–Appellant,**

v.

**Donald W. JACKSON, Commissioner of Revenue, State of Tennessee, Defendant–Appellant–Cross–Appellee.**

Supreme Court of Tennessee, at Nashville.

July 18, 1988.

---

**3.** The existence of her permanent partial disability is *res judicata,* as is the issue of her perma-

nent total disability.

James C. Gooch, Bass, Berry & Sims, Nashville, Thomas M. Hull, Haynes, Hull, Smoot & Reider, P.A., Tullahoma, for plaintiff-appellee-cross-appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant-appellant-cross-appellee.

## OPINION

DROWOTA, Judge.

This direct appeal concerns a tax refund action brought by Plaintiff, Pan Am World Services, Inc., to recover use taxes assessed by Defendant, Donald W. Jackson, the Commissioner of Revenue.[1] The deter-minative issue is whether the fabrication of computer software by Plaintiff's subcontractor, Computer Scientist Corp., Inc., for the United States Air Force at the Arnold Engineering Development Center in Tullahoma, Tennessee, is exempt from taxation under T.C.A. § 67-6-102(14)(B). A constitutional issue regarding the jurisdiction of the Claims Commission over revenue refund actions is pretermitted by the resolution of the first issue and we do not express any opinion on the constitutional question.

The facts are relatively simple. Plaintiff was one of three primary independent contractors at the Arnold Engineering Development Center (AEDC), an installation of the United States Air Force (USAF) that conducts environmental testing of rocket and propulsion systems for the aerospace industry.[2] Plaintiff had a cost-plus-fixed fee contract with the USAF to provide support services at AEDC during the tax years 1981 to 1984. To fulfill its contract obligations, Plaintiff entered into a subcontract with Computer Scientist Corp., Inc. (CSC) to operate and manage computer services, among other responsibilities, at AEDC for the USAF and the primary contractors and their subcontractors. When any contractor or subcontractor required information related to its activities, the requirement was discussed with CSC systems analysts, who determined the appropriate approach for supplying the information. If software was needed to provide the information, CSC could either purchase it on the commercial market, with the attendant sales taxes being paid, or it could develop the software itself. CSC was solely responsible for installing the software and operating the computers. Neither the USAF nor the other contractors had access to the software; they only received the resulting information from the programs. CSC was not instructed how to write the program requested. Under the contract between Plaintiff and the USAF, the soft-

---

1. The present Commissioner of Revenue is Dudley W. Taylor.

2. Over 4,000 people work at AEDC, of which, however, only 360 are USAF personnel. The remaining personnel are employees of the contractors and subcontractors.

ware developed by CSC was the property of the USAF upon its creation. Software developed by predecessor contractors is still utilized at AEDC by all successor contractors. CSC's responsibilities included improving and maintaining the software previously developed by predecessors to assure systems compatibility.

Although the USAF and the other two contractors do not operate or have access to the computers and do not develop software or direct the specific manner in which software is to be developed, the USAF and the contractors have formed what is known as a Systems Integration Board (SIB), which determines what software should be developed from various systems under consideration, setting priorities in development activities and making sure that the computer services contractor is not developing redundant or incompatible systems. A production division at CSC scheduled the frequency of program execution, however, and CSC had exclusive control of the daily operations of computer services. SIB exists because more requests for information are made than the computer system can accommodate, and thus SIB assures that computer services will be fairly available to all contractors. SIB is not a technical production committee that directly oversees the fabrication of the software. CSC was solely responsible for this activity.

In 1984, the Department of Revenue conducted an audit of Plaintiff. As a result, the Sales and Use Tax Division assessed a deficiency for the tax years from January 1, 1984, through year-end 1984, for unpaid use taxes on payments by Plaintiff to CSC under the subcontract. These taxes were paid under protest. In 1984, $462,125.72 were paid and through April 19, 1985, an additional $41,529.32 were remitted to the State under protest, totaling $503,355.04. Interest was also assessed by the State for the tax years in question. On May 15, 1985, Plaintiff filed suit in the Chancery Court for Davidson County, seeking a refund of all taxes paid under protest. After holding a hearing on October 3, 1986, the Chancellor filed a Memorandum Opinion on October 21, 1986, in which he determined that the software fabricated by CSC was exempt from use taxes under T.C.A. § 67–6–102(14)(B) because it fabricated this software for its own use or consumption within the meaning of this statute. By an order of February 10, 1987, which incorporated the Memorandum Opinion, the amount of the refund was reserved for subsequent determination. When the parties could not agree on this amount, subsequent proceedings were held. A second Memorandum Opinion was filed by the trial court. Finding that for the tax year 1985 that the Chancery Court had no subject matter jurisdiction over tax refund suits under the amended statutes, because this jurisdiction had been exclusively vested in the Claims Commission under T.C.A. § 9–8–307(a),[3] the Chancellor denied Plaintiff a refund of the taxes and interest paid under protest for the 1985 tax year but allowed a refund of all taxes and interest paid for the tax years 1981 through 1984. A Final Order was entered on July 22, 1987, and both parties filed Notices of Appeal. We now reverse the trial court on the issue of the exemption and pretermit the issue of the constitutionality of the statute vesting exclusive jurisdiction in the Claims Commission, as that issue is moot since Plaintiff is due no refund of any taxes.

This is a tax refund suit, and as this Court recently stated in *Tennessee Farmers' Cooperative v. State Commissioner of Revenue*, 736 S.W.2d 87, 90 (Tenn.1987),

"[P]laintiff comes to this Court with 'the heavy and exacting burden of proving the error in the assessment'.... Moreover, while tax statutes are generally construed in favor of the taxpayer ... '[i]n a suit against the State by a taxpayer claiming exemption from taxation, the taxing statute is strictly construed against the taxpayer. The burden is on the taxpayer to establish his exemption. The presumption is against the exemption, and exemption from taxation will

---

3. In 1986, the statutes were again amended to revest this jurisdiction in the Chancery Courts.

1986 Public Acts, ch. 749, codified at T.C.A. § 67–1–1801, *et seq.* (Supp.1987).

not be read into a taxing statute by implication.'"

(Citations omitted.) *See also, e.g., Shearin v. Woods*, 597 S.W.2d 895, 896 (Tenn.1980); *Woods v. General Oils, Inc.*, 558 S.W.2d 433, 435 (Tenn.1977).

Subsequent to this Court's construction of the definition of tangible personal property as not encompassing computer software in *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405 (Tenn.1976), the General Assembly specifically enacted amendments to the tax statutes in 1977 and 1978 to extend sales and use taxes to computer software, except when the taxpayer fabricated such software for its own use or consumption. *See University Computing Co. v. Olsen*, 677 S.W.2d 445, 447–448 (Tenn.1984). The exemption has been construed to have a limited purpose. *Id.* Plaintiff does not qualify for this exemption because the software was not fabricated for its own use or consumption but for the USAF. The use of this government property permitted Plaintiff to perform its contract with the USAF and thus to obtain a substantial economic benefit. As the Supreme Court of the United States held in *United States v. Boyd*, 378 U.S. 39, 44, 84 S.Ct. 1518, 1522, 12 L.Ed.2d 713 (1964), "[this] use by the contractor for his own private ends—in connection with commercial activities carried on for profit—is a separate and distinct taxable activity." We find no distinction in this case that would require a different result from that in *United States v. Boyd, supra.* Plaintiff has exercised the privilege of using tangible personal property in Tennessee and is thus subject to the Use Tax. *See, e.g., Young Sales Corp. v. Benson*, 224 Tenn. 88, 91, 450 S.W.2d 574, 576 (1970).

Plaintiff contends that the exemption applies to it because its subcontractor fabricated the software for its own use in performing the Plaintiff's contract with the USAF. It insists that the fact that title to the software was in the USAF is irrelevant because CSC had exclusive dominion and control over it. While we agree that title is not determinative of the issue in this case, we cannot agree that on this record any

reason exists to take this case out of the rationale of *Creasy Systems Consultants, Inc. v. Olsen*, 716 S.W.2d 35 (Tenn.1986). Sales and uses of tangible personal property are treated equally under the statute for most purposes. *See, e.g., University Computing Co. v. Olsen, supra*, at 446; *United States v. Boyd*, 211 Tenn. 139, 163, 363 S.W.2d 193, 203 (1962), *aff'd* 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964). Plaintiff is an independent contractor fabricating computer software for a third party, the USAF. This third party is exempt from taxation, but Plaintiff used the third party's property for its own commercial benefit. Software is taxable, tangible personal property under the statute. T.C.A. § 67-6-102(14)(B) (Supp.1987). Under T.C.A. §§ 67-6-201 (Supp.1987) and 67-6-209 (Supp.1987), "a tax [is imposed] upon the privilege of use by a contractor of tangible personal property, regardless of the title, where such property has not previously borne a sales or use tax." *United States v. Boyd, supra*, 211 Tenn. at 163, 363 S.W. 2d at 203. When Plaintiff purchased software on the commercial market, the sales tax was paid on the transaction; its use of software fabricated for the USAF is treated no differently from software purchased by Plaintiff for the USAF, despite the fact that title in either vested in the USAF. We can only conclude from the plain meaning of these statutes and the logic of the case law that Plaintiff is subject to taxation and does not come within the narrow scope of the exemption. Plaintiff is no longer a contractor at AEDC but the software it developed for the USAF remains at AEDC and is presently being utilized by its successor. Thus, the software was not fabricated for its own use or consumption. As this Court stated in *United States v. Boyd, supra*, "[w]e think this [statute] was intended to be and is a tax upon the use *per se* by such a contractor." 211 Tenn. at 163, 363 S.W.2d at 203.

Accordingly, the judgment of the Chancery Court for Davidson County is reversed. The costs are taxed to Plaintiff. The case is dismissed.

HARBISON, C.J., FONES and O'BRIEN, JJ., and TODD, Special Justice, concur.