Unified Judicial System

 

 
 Formatting courtesy of the State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501
In the Matter of the Sales and Use Tax Refund REQUEST OF MEDIA ONE, INC., License No. 51-0180701-ST 
South Dakota Supreme Court Appeal from the Second Judicial Circuit, Minnehaha County, SD Hon. Gene Paul Kean, Judge #19401 -- Reversed 
Mark Barnett, Attorney General Jack C. Magee, Special Assistant Attorney General, Pierre, SD Attorney for Appellant South Dakota Department of Revenue. 
James A. Hertz, Christopherson, Bailin & Anderson, Sioux Falls, SD Attorneys for Appellee Media One, Inc. 
Considered on Briefs Dec 4, 1996; Opinion Filed Feb 19, 1997 
SABERS, Justice. 
[Â¶1] The Department of Revenue appeals a circuit court decision which reversed an administrative determination that the taxpayer was not entitled to a sales tax refund. We agree with the Department that the sales tax exemption for advertising services does not include the sale of certain tangible personal property by the advertising agency. By notice of review, taxpayer challenges the timeliness of Department's appeal and the appropriate standard of review. 
FACTS 
[Â¶2] In November of 1993, Media One, Inc. (Media One), an advertising agency in Sioux Falls, sought a refund of sales tax it charged its clients and remitted to the Department. After a hearing, the administrative law judge (ALJ) found in Media One's favor that the product it ultimately delivers to its client is tax exempt as "advertising services" even when Media One does not place it in the advertising media. 
[Â¶3] The Department reversed the ALJ's opinion and substituted its own findings of fact and conclusions of law. The Department concluded that the only tax exempt advertising services are those performed in preparing and placing advertisements in the advertising media, and that an advertising agency is required to pay sales tax on those transactions where it prepares an advertisement but does not place it in the advertising media. 
[Â¶4] Media One appealed to the circuit court, which reversed the Department. Circuit Court Judge Kean held that an advertising agency "places" an advertisement in the advertising media, for tax exemption purposes, no matter what medium the advertisement is placed in or on. The court listed examples of media that the exemption encompassed as signs, billboards, containers, papers, and television. The court imposed a constructive trust for the return to Media One's customers of the sales tax. The court also granted attorney fees to Media One, but ordered them taxed against the trust, rather than directly against the Department. This appeal followed. 
[Â¶5] 1. Whether Department Timely Filed Its Appeal 
[Â¶6] Media One claims that the Department's appeal is untimely. SDCL 15-26A-6 provides, in relevant part: 

An appeal from the judgment must be taken within sixty days after the judgment shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party. 
(Emphasis added). Media One argues that the sixty day time period commenced on September 14, 1995, upon the filing of Judge Kean's letter stating his reasons for reversal, accompanied by his judgment and findings of fact and conclusions of law. It asserts that these documents constituted "written notice of entry" for purposes of SDCL 15-26A-6. According to its argument, the sixty days elapsed on November 17, 1995,{1}  and therefore, Department's filing of its notice of appeal on November 28, 1995 was too late. 
[Â¶7] Media One's argument is without merit; Judge Kean's letter did not constitute "written notice of entry" of a signed, attested, and filed judgment. Initially, we note that the letter, the judgment, and the findings of fact and conclusions of law were not filed until September 15, 1995. Although it constituted notice to the Department of the court's disposition of the case, "notwithstanding actual notice by mail to the adverse party of the trial court's final judgment, 'without a written notice of entry, the sixty days do not commence to run.'" Porter v. Porter, 1996 SD 6, 22, 542 NW2d 448, 452 (quoting Kallstrom v. Marshall Beverages, Inc., 397 NW2d 647 (SD 1986)). In Kallstrom we stated: 

A notice of entry of judgment gives to a party the power to set running the time after which his adversary may not appeal and assures each party that the statutory period of time within which he may appeal does not commence to run until his adversary has given such notice. 
397 NW2d at 650 (emphasis added) (citation omitted). As the emphasized language indicates, it is the duty of one party to serve the other with the written notice of entry of judgment. Judge Kean's mailings did not contain a written notice of entry of judgment, and he was not a party to this case.{2}  The sixty days commenced on September 29, 1995, the day after{3}  Media One served the Department by mail written notice of entry of the signed, attested, and filed judgment. Therefore, the Department could have timely filed an appeal as late as November 30, 1995. It filed its notice of appeal on November 28, within the statutory timeframe. 
[Â¶8] 2. Standard of Review 
[Â¶9] Our role in reviewing administrative appeals is well-settled: 

We will overrule an agency's findings of fact only when they are clearly erroneous. The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some "substantial evidence" in the record which supports the Department's determination, this court will affirm. Great weight is given to the findings made and inferences drawn by an agency on questions of fact. Conclusions of law are given no deference and are fully reviewable. 
Hendrix v. Graham Tire Co., 520 NW2d 876, 878-79 (SD 1994) (citations and internal quotations omitted). We review the administrative agency's decision without any presumption that the circuit court's decision was correct. Nilson v. Clay County, 534 NW2d 598, 600 (SD 1995). 

The question of whether a statute imposes a tax under a given factual situation is a question of law. Statutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body. Statutes exempting property from taxation should be strictly construed in favor of the taxing power. The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption. 
National Food Corp. v. Aurora Cty. Bd. of Comm'rs, 537 NW2d 564, 566 (SD 1995) (citing Thermoset Plastics, Inc. v. Department of Revenue, 473 NW2d 136, 138-39 (SD 1991)); see also Estate of He Crow v. Jensen, 494 NW2d 186, 191 (SD 1992) ("[W]e construe administrative rules according to their intent as determined from the rule as a whole and other rules relating to the same subject."). 
[Â¶10] The Department claims that this court should defer to its interpretation of the tax statutes, relying upon In re Sales Tax Liab. of Valley Queen Cheese, 387 NW2d 39, 40 (SD 1986), where we stated: "[T]he construction and interpretation given a statute by an administrative body charged with its administration is entitled to great weight." (Citation omitted). By notice of review, Media One contends the Department's statutory construction is entitled to deference only when expressly authorized by statute. In support of its position, Media One points to Modern Merchandising v. Department of Revenue, 397 NW2d 470, 471 (SD 1986), where we stated: 

This court gives no deference to a lower court's legal conclusion. It is true some cases accord "great weight" to an agency's statutory interpretation. However, this rule applies only when the agency is expressly authorized by statute to make such an interpretation. The Secretary of Revenue has been given no such power under the statutes applicable in this case. Compare [In re Tax Liab. of Webber Furniture, 290 NW2d 865 (SD 1980)] (involving SDCL 10-46-1(6) which expressly gives the Secretary of Revenue power to interpret the meaning of the word "agents" for use tax purposes).{4}  
(Other citations omitted). We must determine whether there is a similar statute which grants the Department the authority to regulate the application of the tax exemption statutes. 
[Â¶11] The Department claims that SDCL 10-45-47.1 provides authorization{5}  for it to interpret "advertising services": 

The secretary of revenue may promulgate rules pursuant to chapter 1-26 concerning: 

... 
(3) Determining the application of the tax and exemptions[.] 
"Rule" is defined as "each agency statement of general applicability that implements, interprets, or prescribes law, policy, procedure, or practice requirements of any agency." SDCL 1-26-1(8). This means the Department is authorized to "determine the application" of the exemption statute in its rules, which it has done. The courts of this state enforce agency rules once they are properly adopted by the Legislature. SDCL 1-26-6.8. The current Department of Revenue rules were adopted in 1987. SDCL 1-26A-1.10. "Administrative rules have the force of law and are presumed valid." State v. Dorhout, 513 NW2d 390, 394 (SD 1994) (citations omitted); accord Duffy v. Mortenson, 497 NW2d 437, 439 (SD 1993). Although we give great weight to the Department's rules, we give no deference to its conclusions of law in contested cases. Whether the Department correctly applied its rules presents a question of law; when resolution of a dispute presents a question of law we accord no deference to the conclusions reached by the Department or the circuit court. Sioux Falls Newspapers, Inc. v. Secretary of Revenue, 423 NW2d 806, 807 (SD 1988) (citations omitted). 
[Â¶12] 3. Whether Media One Is Entitled To An Exemption For "Advertising Services" When It Prepares An Advertisement or Product For a Client But Does Not Place It In The Advertising Media 
[Â¶13] Sales tax is imposed "upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered ... unless the service is specifically exempt[.]" SDCL 10-45-4. "Advertising services" are specifically exempt from sales tax via SDCL 10-45-12.1. The Department promulgated the following rule, which defines the term "advertising services," and sets the parameters of the exemption: 

Advertising services are the business of preparing advertisements for publication in newspapers, magazines, placemats, billboards, or handbills or for broadcast and welcoming services which contact new residents and others to explain business services within the area and leave promotional literature. 
Charges for advertising in newspapers or magazines are not taxable. Likewise, charges made by advertising agencies for preparing and placing advertising in advertising media are charges for services and therefore not taxable. 
Services purchased by the agency to assist it in completing a project for a current customer are not subject to tax if the service is an integral and inseparable component of the ultimate service to its customer and the agency provides the service provider with a resale certificate. Examples of services that may be considered for resale if they are an integral and inseparable part of the final product are art work, proofreading, copywriting, handlettering, photo finishing, modeling, photography, production studio rental, photo studio rental, video studio rental, audio studio rental, prop rental, music rights, sound effects, dubbing, typesetting, color separation, keylining, illustration, retouching, air brushing, silk screening, and editing. 
Sales tax applies to gross receipts from sales of tangible personal property to persons providing advertising services for use and consumption in preparing advertisements. Tax applies to the following: paper, ink, paint, tools, office supplies, type, and charges by printers for production of pamphlets, booklets, brochures, and other material printed by them. 
ARSD 64:06:02:03. This rule was adopted in 1987. See SDCL 1-26A-1.10. As noted above, "[a]dministrative rules have the force of law and are presumed valid." Dorhout, 513 NW2d at 394; Duffy, 497 NW2d at 439. 
[Â¶14] At issue in this case is whether certain items delivered by Media One to its customers constitutes tax exempt advertising services or taxable tangible personal property.{6}  Department claims that items such as point-of-purchase counter cards,{7}  posters,{8}  dealer sheets,{9}  newsletters, videos, announcements, and advertisement slicks{10}  produced by Media One and delivered directly to the customer are outside the exemption and subject to sales tax. All of these items become the property of the customer, who determines when and if they will be used or displayed to the public, and whether they will ever be placed in the advertising media. 
[Â¶15] Media One, on the other hand, argues that it is primarily providing an advertising service through "creative activity and client consultation," and that the act of placement of the advertisement onto these various items is incidental and minimal in comparison to the hours expended in creating the final outcome. 
[Â¶16] Sales of tangible personal property are subject to sales tax: 

There is hereby imposed a tax upon ... the gross receipts of all sales of tangible personal property consisting of goods, wares, or merchandise, except as taxed by 10-45-3 and except as otherwise provided in this chapter, sold at retail in the State of South Dakota to consumers or users. 
SDCL 10-45-2. Media One argues that its services cannot be severed from the final product, and therefore it is solely services that it is providing; however, in calculating gross receipts, "no deduction is allowed for the cost of labor or services purchased." SDCL 10-45-1(3) (emphasis added). See also Pledger v. Baldor Int'l, Inc., 827 SW2d 646, 648-49 (Ark 1992) (stating that services cannot be separated from materials when they are necessarily included in the costs of final product or advertising materials constituting tangible personal property, even when billing clearly distinguished between services and goods); Jackson Advertising Corp. v. State Tax Assessor, 551 A2d 1365, 1368 (Me 1988) ("The fact that property the subject of a sale is custom made and that labor is the principal cost factor does not establish the contract as one for rendition of services rather than sale."); Sneary v. Director of Revenue, 865 SW2d 342, 348 (Mo 1993) (en banc) (rejecting similar argument and noting that architectural illustration is the sine qua non of the services rendered). 
[Â¶17] Sioux Falls Newspapers instructs that the focus belongs on the transaction, not the character of the participants.{11}  423 NW2d at 808. In that case, we discussed whether syndicated columnists' work constituted tangible personal property: 

It is not necessary for us to determine whether intangible information may be severed from the tangible medium of transmission. The items involved in this assessment are not raw information, but the tangible end product of an individual's skills. Columns, features, and editorials such as those written by Art Buchwald, Ann Landers, Erma Bombeck, Sylvia Porter, George Will, and Ellen Goodman, are not just rote reporting of current news events; they are the finished product of a writer's skills. Likewise, the comics are the finished product of an artist's or writer's skills. Therefore, we hold that these syndicated materials are tangible personal property. 
Id. at 810 (citation omitted) (emphasis in original). 
[Â¶18] Regardless of the preparation and time expended in developing the items at issue in this case, the end result is a transaction where Media One sells the finished product of its employees' skills -- tangible personal property -- to a consumer. Id. Furthermore, the decision of whether to ever place that property in the advertising media belongs to the customer alone. See K Mart Corp. v. South Dakota Dep't of Revenue, 345 NW2d 55, 58 (SD 1984) (finding use tax applicable to advertisements "by virtue of [taxpayer's] ownership of the supplements and its power to determine the date of distribution and the number of copies to be distributed"). We look to SDCL 10-45-12.1 and ARSD 64:06:02:03 to determine whether these transactions are entitled to the exemption. 
[Â¶19] ARSD 64:06:02:03 defines "advertising services" as "the business of preparing advertisements for publication in newspapers, magazines, placemats, billboards, or handbills or for broadcast." The Department held that the exemption requires the advertising agency to both prepare the advertisement and place it in the advertising media. We agree that a fair reading of the second paragraph of ARSD 64:06:02:03, "charges made by advertising agencies for preparing and placing advertising in advertising media are charges for services and therefore not taxable" dictates this conclusion. Additionally, we agree that the phrase, "advertising media" -- as used in this regulation -- refers back to the first paragraph, which requires publication to occur in newspapers, magazines, or billboards, or for broadcast, presumably radio or television.{12}  Any other interpretation would contradict the plain language of the rule, which defines "advertising services" as the "business of preparing advertisements for publication" in these, and only these, listed media. "[W]e must construe statutes according to their intent, and intent must be determined from the statutes as a whole, as well as enactments relating to the same subject."{13}  Whalen v. Whalen, 490 NW2d 276, 280 (SD 1992) (citations omitted). Therefore, the production and sale of point-of-purchase counter cards, posters, dealer sheets, newsletters, videos, announcements, and advertisement slicks are outside the exemption.{14}  Although Media One claims these items as exempt advertising services, they are very similar to the items specifically taxed as not exempt in K Mart, 345 NW2d at 58.{15}  
[Â¶20] Further evidence that these items are tangible personal property and outside the exemption for advertising services is demonstrated by the provision for a "use" tax on such items. See SDCL 10-46-1(12): 

"Use," the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it does not include the sale of that property in the regular course of business.{16}  "Use" also includes the use of the types of services, the gross receipts from the sale of which are to be included in the measure of the tax imposed by chapter 10-45, and any amendments thereto and the delivery or causing delivery into this state of tangible personal property intended to advertise products or services or promote or facilitate sales to South Dakota residents. 
(Emphasis added). The fact that there is a use tax on these items leads us to conclude that there must also be a sales tax on the same items, as a use tax cannot exist in the absence of a sales tax. See, e.g., Northwestern Nat'l Bank of Sioux Falls v. Gillis, 82 SD 457, 467, 148 NW2d 293, 298 (1967): 

In addition to raising money it is to help the retailers in this state, who are subject to the sales tax, compete on an equal footing with out-of-state competitors. 
... 
The use tax complements and supplements the sales tax by imposing upon those subject to it a tax burden equal to the sales tax in order that property sold or utilized in this state would be taxable once for support of state government.{17}  
(Citations omitted.) 
[Â¶21] As noted above, tax exemption statutes are strictly construed in favor of the taxing power and "the taxpayer has the burden of proving entitlement to an exemption." Sioux Valley Hosp. Ass'n v. State, 519 NW2d 334, 335 (SD 1994) (citation omitted). Media One did not meet its burden of proving entitlement to this exemption for these items; therefore, the circuit court's opinion is reversed and this matter remanded for proceedings consistent with this decision.{18}  In view of this decision, the issues concerning taxpayer's attorney fees and the circuit court's imposition of a constructive trust to directly refund taxpayer's customers are moot. 
[Â¶22] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur. 
[Â¶23] AMUNDSON, Justice, concurs specially. 
AMUNDSON, Justice (concurring specially). 
[Â¶24] In its brief to this Court, Media One argues that its business is classified in the Standard Industrial Classification Manual under the Business Services section. The legislature has determined that services of a corporation identified in major group 73 of the manual are subject to sales tax pursuant to SDCL 10-45-5.2. This statute states, in part: 

The following services enumerated in the Standard Industrial Classification Manual, 1987, as prepared by the Statistical Policy Division of the Office Management and Budget, Office of the President, are specifically subject to the tax levied by this chapter; ... business services (Major group 73); ... The services enumerated in this section may not be construed as a comprehensive list of taxable services but rather as a representative list of services intended to be taxable under this chapter. (emphasis added) 
Therefore, Media One made an admission of taxability which is dispositive of this appeal. See, e.g., Tuttle v. Tuttle, 399 NW2d 876, 878 n2 (SD 1987) (stating that an admission of debt in a brief is binding on the party) (cross-referencing Reichert v. Reichert, 77 SD 258, 90 NW2d 403 (1958) (admission in brief of controverted fact binding on party)). 
Footnotes
fn1.  This includes a three-day allowance for mailing. See SDCL 15-6-6(e): 

Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him, or whenever such service is required to be made a prescribed period before a specified event, and the notice or paper is served by mail, three days shall be added to the prescribed period. 
fn2.  Even assuming that correspondence from the court could constitute notice of entry of judgment, Judge Kean's letter left open the possibility that his judgment was not final: 

Media One's most recent set of findings and conclusions were signed by the Court and, along with a proposed judgment also signed, filed with the Clerk on September 14, 1995. Because there have been so many different sets of documents sent around, I am with Mr. Magee's letters sending him a photocopy of what I actually signed so, if he had any additional objections, he can focus his thoughts on what was actually adopted. (Emphasis in original). 
fn3.  See 15-6-6(a), which provides, in relevant part: 

In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. 
fn4.  The statute cited in Webber Furniture is now SDCL 10-46-1(7) and provides, in part: 

[I]f in the opinion of the secretary of revenue, it is necessary for the efficient administration of this chapter to regard any salesmen, representatives, truckers, peddlers or canvassers as agents ... the secretary of revenue may so regard them and may regard the dealers, distributors, supervisors, employers or persons as retailers for purposes of this chapter[.] 
fn5.  The Department also claims that SDCL 10-1-40 authorizes statutory construction. That statute provides, in relevant part: "It shall be the duty of the secretary of revenue and he shall have power to construe the tax laws of the state whenever requested by any officer acting under such laws[.]" (Emphasis added). This is not a matter of a Department of Revenue employee or officer seeking clarification of a tax law. This statute does not provide express authorization to define terms in statutes. 
fn6.  Transactions where Media One both prepared an advertisement and placed it in the advertising media were within the exemption and not the subject of this appeal. 
fn7.  These cards are designed by Media One to be displayed in stores where a product is displayed or sold. They are printed by an outside printing company and delivered by the printer to Media One's client. The example presented in this case was a cardboard display with slots to hold an oven mitt. The mitt was free with the purchase of two "Moose Brothers" pizzas. 
fn8.  The posters are also designed to be displayed where a product is sold. 
fn9.  Dealer sheets are prepared for manufacturers or wholesalers of products to present their product to retailers. The example discussed at the hearing was a dealer sheet with pictures and descriptions of certain doors. The sheets are ultimately sent to retailers to entice them to include the doors in their inventory. 
fn10.  Advertisement slicks are ready-made advertisements that can be copied by Media One's clients for publication in a newspaper, brochure, or flier. The slick becomes the property of the client, who is responsible for its reproduction or placement in the advertising media. 
fn11.  "Regardless of whether Argus is characterized as a printer, an advertising service or a newspaper, its transactions with Lewis in printing the inserts were those of a retailer selling tangible personal property to a consumer." 423 NW2d at 808. 
fn12.  The logic of including handbills and placemats in this section is not readily apparent and appears somewhat aberrational. 
fn13.  Our decision comports with SDCL 10-45-4.1, which defines "services" as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property. In determining what is a service, the intended use, principal objective or ultimate objective of the contracting parties shall not be controlling." In contrast, in non-exempt transactions, the customer receives a tangible item, but not the service of having its product advertised in the advertising media. 
fn14.  In fact, the trial court's overly broad definition of advertising services and advertising media included items handed out or delivered directly to consumers and never placed in the advertising media. Such a broad definition is contrary to Sioux Falls Newspapers and K Mart, supra, and undermines the intent of the statute and the rule: 

When a statute is clear and unambiguous it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide. In other words, the "letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute." 
State v. DeNoyer, 541 NW2d 725, 730 (SD 1995) (citation omitted); see also Christopherson v. Reeves, 44 SD 634, 642, 184 NW 1015, 1017 (1921) (noting that statutory definitions "of course" control). 
fn15.  This is a common interpretation. See, e.g., Travelhost of Ozark Mt. Country v. Director of Revenue, 785 SW2d 541, 544-45 (Mo 1990) (en banc), ("[When] the advertising service sold is no more than the oral communication of the idea, the medium is the spoken word and no tangible personal property is involved. However, to the extent that the idea must be communicated through a different medium -- e.g., an audio tape, a video tape, or the creative arrangement of ink on paper -- tangible personal property is required."); Emery Indus., Inc. v. Limbach, 539 NE2d 608, 613 (Ohio 1989) (stating that the test of whether an advertising transaction is taxable depends upon whether the transfer of the property is a "consequential element" of the transaction); cf. Val-Pak of Omaha, Inc. v. Department of Revenue, 545 NW2d 447, 449-50 (Neb 1996) (finding that control over preparation and distribution of direct-mail advertising materials constituted a taxable use). 
fn16.  We have previously interpreted this exception: "We understand this to mean that use tax, consistent with its complementary relationship to sales tax, generally applies to retail transactions and not to transactions where items are purchased for resale." Sioux Falls Newspapers, 423 NW2d at 810. 
fn17.  Accord People of Faith, Inc. v. Department of Revenue, 779 P2d 829, 832 (ArizTaxCt), appeal dismissed, 791 P2d 369 (ArizCtApp 1989) ("[S]ales taxes and use taxes are complementary."); see also Sioux Falls Newspapers, 423 NW2d at 810 n3 ("The compensatory use tax is levied on property used within the state if that property would have been subject to sales tax if purchased within the state."); Howard Elec. & Mech., Inc. v. Department of Revenue, 771 P2d 475, 477 (Colo 1989) ("A use tax is considered supplementary to, not separate from, sales tax ... . The [use] tax is in reality a tax upon the right to use property upon which a sales tax has not been paid."); Associates Leasing, Inc. v. Department of Revenue, 456 NW2d 210, 211 (Iowa 1990) ("[Use tax] was enacted to complement our sales tax by removing a buyer's temptation to purchase goods out of state to avoid payment of a sales tax."); Interstate Printing Co. v. Department of Revenue, 459 NW2d 519, 526 (Neb 1990) ("The general theory behind the sales and use taxes is to impose a tax on each item of property, unless specifically excluded, at some point in the chain of commerce ... . If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies."); Pan Am World Svcs., Inc. v. Jackson, 754 SW2d 53, 56 (Tenn 1988) ("Sales and uses of tangible personal property are treated equally under the statute for most purposes."). 
fn18.  Prior to this case, the Department adhered to a policy where the exemption did not apply unless the advertisement was placed in the advertising media within 90 days of its preparation. The Department ruled in this case that policy was arbitrary and held that Media One's customers were entitled to a refund for the sales tax Media One erroneously collected and remitted in accordance with this policy. Although not mentioned in either party's brief nor appealed by the Department, this refund is not affected by this decision and should be processed by the Department.