2001 SD 112

## FREEMAN COMMUNITY HOSPITAL AND NURSING HOME, Appellant,

v.

## HUTCHINSON COUNTY; Jerome Hoff, Auditor; Donna Zeeb, Director of Equalization; Scott Schleske, Commissioner; Gillas Stern, Commissioner, Russell A. Leonard, Commissioner, et al., Appellees.

No. 21656.

Supreme Court of South Dakota.

Argued May 30, 2001.

Decided Aug. 22, 2001.

Rehearing Denied Sept. 11, 2001.

Jeremiah D. Murphy, Jeffrey C. Clapper of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD; Don A. Bierle of Bierle & Michels, Yankton, SD, Attorneys for appellant.

Timothy R. Whalen, Lake Andes, SD, Attorneys for appellees.

Lisa Z. Rothschadl, Hutchinson County State's Attorney, Tyndall, SD, Attorney pro tem.

MILLER, Chief Justice

[¶ 1.] In this appeal we hold that a congregate living facility owned and operated by a community hospital is entitled to tax-exempt status.

## FACTS

[¶ 2.] In 1996, Freeman Community Hospital and Nursing Home (Hospital), a 501(c)(3) non-profit organization which is licensed under SDCL 34–12, built a ten-unit living facility in Freeman, South Dakota. The facility, known as Walnut Street Village (WSV), is located one-half block from the hospital. It intended the property to qualify for tax-exempt status as a congregate living facility under South Dakota law. WSV houses ten elderly people whose ages mostly range in the eighties. Under a residency agreement, occupants lease the living quarters, which include a full kitchen and two wheelchair accessible bathrooms. WSV also provides breakfast everyday at no additional charge and residents have access to two more meals for a nominal fee through either Hospital or Meals–on–Wheels. Occupants' phones are connected by speed dial to Hospital's nurse station for use in case of medical emergency or maintenance needs.

[¶ 3.] In 1997, Hospital applied to the Hutchinson County Board of Equalization for tax-exempt status for WSV. The Board denied tax-exempt status in April 1998 and Hospital appealed. On appeal, the circuit court affirmed. We reverse.

## STANDARD OF REVIEW

[¶ 4.] Whether a taxing statute creates an exemption under a given set of facts is a question of law. *See Robinson & Muenster Assoc., Inc. v. South Dakota Dep't of Revenue*, 1999 SD 132, ¶ 7, 601 N.W.2d 610, 612. In effecting the purpose of a statute, we give the words in the statutes their "'reasonable, natural, and practical meaning.'" *Id.* (citing *Matter of Sales & Use Tax Refund Request of Media One, Inc.*, 1997 SD 17, ¶ 9, 559 N.W.2d 875, 877; *National Food Corp. v. Aurora Cty. Bd. of Comm'rs*, 537 N.W.2d 564, 566 (S.D. 1995); *Thermoset Plastics, Inc. v. Department of Revenue*, 473 N.W.2d 136, 138–39 (S.D.1991)). We construe statutes granting tax exemptions in favor of the taxing power and we give no deference to the conclusions of the taxing authority or the circuit court when reviewing a question of law. *Department of Revenue v. Sanborn Tel. Coop.*, 455 N.W.2d 223, 225 (S.D.1990) (quoting *Midcontinent Broad. Co. v. Revenue Dep't*, 424 N.W.2d 153, 154 (S.D. 1988)).

## DECISION

**[¶ 5.] 1. WSV qualifies for tax-exempt status.**

[¶ 6.] The parties dispute whether Hospital has shown that WSV satisfies the requirements for tax-exempt status under SDCL 10–4–9.3. The statute provides:

Property owned by any corporation, organization or society and used primarily for human health care and health care related purposes is exempt from taxation. Such corporation, organization or society must be nonprofit and recognized as an exempt organization under section 501(c)(3) of the United States Internal Revenue Code of 1954, as amended, and in effect on January 1, 1986, and may not have any of its assets available to any private interest. Such property may be a hospital, sanitarium, orphanage, mental health center or adjustment training center regulated under chapter 27A–5, asylum, home, resort, congregate housing or camp. *Congregate housing is health care related if it is an assisted, independent group-living environment operated by a health care facility licensed under chapter 34–12 which offers residential accommodations and supporting services primarily for persons at least sixty-two years of age or disabled as defined under chapter 10–6A. Supporting services must include the ability to provide health care and must include a food service which provides a balanced nutrition program.* Such health care facility must admit all persons for treatment consistent with the facility's ability to provide medical services required by the patient until such facility is filled to its ordinary capacity and must conform to all regulations of and permit inspections by the South Dakota Department of Health.

SDCL 10–4–9.3 (emphasis added). County stipulated that WSV meets all the statutory requirements except: (1) the ability to provide healthcare; (2) a food service which provides a balanced nutritional program; and (3) Hospital assets are not available to private interests. It is important to remember that a congregate living facility is intended to provide an *independent* living environment for elderly citizens with some assistance. SDCL 10–4–9.3.

[¶ 7.] *a. Health care*

[¶ 8.] Under SDCL 10–4–9.3, a congregate living facility must have "the ability to provide healthcare" in order to qualify for tax-exempt status. The burden is on the Hospital to show that it has the ability to provide healthcare. Interestingly, the parties stipulated to the following facts:

11. The nursing staff and attending physician determine the medical condition status and ability of the occupant during the term of occupancy and in the event of emergency.

13. Alternative programs such as independent home health care services or similar services offered to occupants are as follows:

(a) Health screening

(b) Special diets provided and monitored

(c) Household services

(d) Social Service/activity programs

(e) Emergency call system, including response assessment and appropriate follow-up action

(f) Wellness education material and workshops

14. More intensive services provided for a long duration of time are available through community based health programs. The Freeman Community Hospital Health Agency is available to provide assistance in daily living activities,

i.e., bathing, grooming, transferring and other models of activity required to maintain independence. These activities supplement the services provided by the Staff and are arranged for by the facility.

The stipulated facts provide ample support for Hospital's assertion that it has the ability to provide health care to WSV occupants. In fact, we find it curious that County would stipulate to these facts and then argue that Hospital is not able to provide health care.

[¶ 9.] County argues that the services offered to WSV occupants are no different than health care services available in the community at large. Hospital agrees that this is true, but it correctly points out that the statute does not require it to offer unique or exclusive healthcare. We agree. The statute requires that Hospital have the ability to provide healthcare. County stipulated to facts indicating Hospital has such ability. Thus, giving the words in the statute a reasonable, natural and practical meaning, Hospital has sustained its burden of showing it has the ability to provide healthcare.*

[¶ 10.] *b. Food service*

■ [¶ 11.] In 1988, two years after it adopted SDCL 10-4-9.3, the legislature amended the statute. Originally, it required congregate living facilities to provide a "full" food service; however, the 1988 amendment, among other changes, removed the word "full." The legislature's removal of the word "full" as it modifies food service indicates its desire to ease compliance with this requirement by not requiring a full food service be provided.

[¶ 12.] The parties do not dispute the facts concerning food service. WSV occu-

pants have available to them, every day of the year, a breakfast prepared under the supervision of dietary management to comply with federal guidelines. The breakfast is included in the monthly rent. Two more daily meals are also available to residents through Meals-on-Wheels or through Hospital's dietary department. Additionally, WSV has the ability to provide for special needs diets and has done so on at least one occasion. Through its daily breakfast and the availability of lunch and dinner everyday, we conclude that Hospital's food service provides a balanced nutrition program to occupants, as contemplated by the statute.

[¶ 13.] County, once again, argues that the balanced nutrition program available to WSV occupants is available in the community at large. Hospital contends that this is irrelevant under the statute. We agree. The statute does not require that the food service be unique or different from what is available in the community.

[¶ 14.] *c. Assets*

[¶ 15.] County's final argument concerning fulfillment of the statutory requirements asserts that Hospital's financing of WSV permits private interests in Hospital's assets. County bases this argument on the language prohibiting private interests in any of Hospital's assets. As Hospital notes, the language is merely a reflection of one of the requirements in the Internal Revenue Code for qualifying as an exempt organization under 501(c)(3). 26 USC § 501(c)(3).

■ [¶ 16.] Although County stipulated that Hospital is a 501(c)(3) exempt organization as required under the statute, it attempts to parlay the language con-

---

* Furthermore, congregate living facilities are the only property to which the tax exemption is available that are not subject to state licens- ing. A congregate living facility would be subject to licensure if it had a doctor or nurse as a full time staff member.

cerning private interest into a prohibition against the Hospital leasing the WSV units to the occupants. Given the statutory language defining qualified congregate housing as that "which offers residential accommodations," we find the County's argument lacks merit. SDCL 10–4–9.3. Hospital asserts that its articles of incorporation were amended in 1966 to provide for the distribution of assets upon dissolution to: (1) one or more exempt purposes; (2) a similar exempt organization; or (3) the Federal or State government. Hospital argues this fulfills the purpose of the statutory language in the Internal Revenue Code and our statute. We agree. Although we strictly construe "laws exempting property from taxation" in favor of the taxing power, we will not contrive a strained construction. *Application of Veith*, 261 N.W.2d 424, 426 (S.D.1978) (citations omitted). Rather, we must "give a reasonable, natural, and practical construction to effectuate" the reason for which the exemption was created. *Id.*

[¶ 17.] **2. Hospital does not need to show it relieves a governmental burden.**

[¶ 18.] "[W]e must assume that the legislature, in enacting a provision, had in mind previously enacted statutes relating to the same subject." *Meyerink v. Northwestern Public Svc. Co.*, 391 N.W.2d 180, 184 (S.D.1986). County argues that Hospital must show it is relieving a governmental burden as is required under SDCL 10–4–9.1 and SDCL 10–4–9.2. This argument completely lacks merit for two reasons.

[¶ 19.] First, before 1986, SDCL 10–4–9 provided a broad tax exemption for " 'property belonging to any charitable, benevolent, or religious society....' " *Lutherans Outdoors in South Dakota, Inc. v. South Dakota State Bd. of Equalization*, 475 N.W.2d 140, 141 (S.D.1991). In 1986, the legislature amended SDCL 10–4–9 limiting its application to only property owned a religious society. At the same session, the legislature created 10–4–9.1, 10–4–9.2 and 10–4–9.3. Section 9.1 governs tax-exempt status for public charities and section 9.2 governs tax-exempt status for benevolent organizations. Each requires its subject entity to relieve a governmental burden as one condition to qualify for the property tax exemption. Section 9.3 governs tax-exempt status for nonprofit corporations, such as Hospital. Importantly, section 9.3 does not require a nonprofit corporation to relieve a governmental burden. Had the legislature intended to place that requirement on nonprofit corporations it would have done so, but it did not.

[¶ 20.] Second, when the legislature amended section 9.3 in 1988, it did not add the requirement that nonprofit corporations relieve a governmental burden. This is reflective of its intent.

[¶ 21.] County's argument lacks merit and we hold that Hospital need not relieve a governmental burden to qualify for property tax exemption under the present statutory scheme.

[¶ 22.] Reversed.

[¶ 23.] AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 24.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 25.] I agree that it is not necessary for this congregate living facility (CLF) to show it relieves a governmental burden, but I do not agree that it has shown that it has the *ability* to provide the necessary supporting services of:

1) health care, and

2) "food service which provides a balanced nutritional program."

Quite simply, it has only shown that its parent (Hospital) has those abilities. It is not enough to merely make these required services *available* part-time to the residents of the CLF to qualify for tax-exempt status. The requirements of SDCL 10–4–9.3 are mandatory and unforgiving and there is no tax exemption for almost complying or complying in part.

[¶ 26.] The majority opinion gives lip service to the rule that we will strictly construe "laws exempting property from taxation in favor of the taxing power" and then violates the rule by "contriv[ing] a strained construction." *Application of Veith,* 261 N.W.2d at 426. The "supporting services" required by SDCL 10–4–9.3 include the *ability* to provide health care and also a balanced nutritional food program. This means that CFL must be able to provide health care and a balanced nutritional food program all the time, even if all these services are not always used by all residents all the time. It certainly does not mean mere *availability* within the community at large.

[¶ 27.] The majority opinion determines that County has stipulated itself out of court. Nonsense. The stipulated facts do not satisfy CLF's burden, instead, they provide an overview of the uncontroverted services CLF makes "available" and then the courts determine if they are sufficient for tax exemption. They are not. Neither the evidence presented, nor the stipulation, satisfies these statutory requirements.

[¶ 28.] The health care services offered at CLF are unremarkable at best. The "health screening" provided by CLF consists of a form listing whom to contact in case of an emergency, a physician's name, and whether the resident requires a cane, walker, etc. County offered expert testimony that indicated this is not the typical health screening process, generally a health screening would include such things as blood pressure checks, cholesterol and blood sugar screens. The "household services" referenced in the stipulation includes such things as snow removal, window washing and general yard work. None of which help establish CLF's claim to gain tax-exempt status.

[¶ 29.] The "emergency call system" provided by CLF includes nothing more than a programmed telephone set for the hospital. This system puts a resident in contact with an on-call nurse who then determines if 911 should be called. This emergency call system can also be used to summon maintenance for nonemergency repairs, this may be convenient but it is not enough to satisfy the statute. Is this really what the legislature envisioned when it attempted to attract safe, caring and responsive facilities for our older citizens through the tax-exempt scheme? The stipulation acknowledges only that the parent (Hospital) makes available the types of services required to satisfy the requirements of SDCL 10–4–9.3. The majority opinion misreads Hospital's *availability* as the equivalent of CLF's *ability.*

[¶ 30.] Additionally, the stipulation provides that the CLF offers "special diets." What this really means is that CLF tenants are provided one meal, breakfast. All other meals can only be obtained through the meals-on-wheels service or at Hospital. Obviously, these same services are available at local cafes or restaurants. Once again, Hospital, not CLF, makes available the services that CLF claims it has the ability to provide. The statute clearly requires that CLF have the ability to provide "a balanced nutritional program." Even the CLF expert testified that a balanced breakfast is not a balanced nutritional program. Basically, CLF has the ability to provide less than one-third of its requirement. The majority opinion determines this is sufficient under the statute.

I do not. Because CLF has not met the stringent requirements, the general rule in SDCL 10–4–1 requiring property to be subject to taxation should control.

[¶31.] Therefore, I dissent.

[¶32.] We should affirm the circuit court in all respects.