1999 SD 132

**ROBINSON & MUENSTER ASSOCIATES, INC.,**
Appellee,

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE,** Appellant.

No. 20730.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided Oct. 6, 1999.

Lee A. Magnuson of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for appellee.

Harvey M. Crow, Jr., Rapid City, for appellant.

AMUNDSON, Justice.

[¶ 1.] South Dakota Department of Revenue (Department) appeals from the circuit court's determination that transactions between Robinson & Muenster Associates, Inc., (Robinson) and its suppliers were not taxable under South Dakota's Use Tax. We affirm.

## FACTS

[¶ 2.] Robinson is a research, fundraising, and grass roots telecommunications[1] business located in Sioux Falls, South Dakota. For purposes of conducting its business, Robinson purchases telematching services[2] along with samples and lists of telephone numbers for demographically identified groups or areas (collectively samples) from out-of-state providers. The research by Robinson is done both for end-use clients and for other research firms.

[¶ 3.] When Robinson contracts with a customer, the customer outlines the type of service requested. The samples are then ordered, tailored to the customer's needs by what Robinson deems appropriate to achieve the requested information. Robinson obtains these samples under agreements whereby Robinson uses the sample to conduct the research or polling for its customers and then transfers this sample along with the final results to the contracting customer. Some of Robinson's customers provide their own samples. Some samples are purchased by Robinson and delivered to Robinson's customers without any further function provided by Robinson. Robinson is reimbursed by the customer for obtaining the samples. Robinson does not receive any profit for providing these samples. The costs for the samples and analysis services are separately itemized and Robinson charges sales tax for the entire report, including samples, for sales made to resident customers within South Dakota. Robinson does not pay a sales tax on its purchase of the samples.

[¶ 4.] At no time does Robinson have title to the samples. The samples are obtained under agreements whereby title

1. Grass roots telecommunications is where a political group will hire the firm to make phone calls to the group's membership and educate them about a particular issue and ask the membership to call or write their politician.

2. Telematching is the process of fitting telephone numbers to lists of names or addresses.

remains in the firms from whom Robinson purchases the right to use the information.

[¶ 5.] Once the results are submitted to Robinson's customers, Robinson destroys its electronic copy of the information. The information is not usable for another of Robinson's customers.

[¶ 6.] Department conducted a sales and use tax audit of Robinson for the period of January 1993 through January 1996. As a result of the audit, use taxes were assessed on these samples purchased by Robinson from an out-of-state provider. Robinson was assessed for South Dakota and city use tax of $21,999.54, plus interest of $5921.68, for a total assessment of $27,-921.22. Robinson appealed the assessment. The hearing examiner determined that these samples were subject to a use tax and upheld the assessment. Robinson appealed to circuit court raising the issue whether Robinson used the samples in the regular course of its business or whether it sold the samples to its customers. The circuit court reversed, determining Robinson was not subject to the use tax because there was no "ownership" of the samples as provided by statute. Department appeals. We conclude the following issue to be determinative on appeal:

[¶ 7.] **Whether the samples purchased from out-of-state providers for Robinson's customers were sold in the regular course of business and, thus, not subject to the South Dakota use tax.**

## STANDARD OF REVIEW

■ The question of whether statute imposes a tax under a given factual situation is a question of law. Statutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body. Statutes exempting property from taxation should be strictly construed in favor of the taxing power. The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the statute.

*Matter of Sales & Use Tax Refund Request of Media One, Inc.,* 1997 SD 17, ¶ 9, 559 N.W.2d 875, 877; *National Food Corp. v. Aurora Cty. Bd. of Comm'rs,* 537 N.W.2d 564, 566 (S.D.1995); *Thermoset Plastics, Inc. v. Department of Revenue,* 473 N.W.2d 136, 138–39 (S.D.1991). " 'Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by [the] Department [of Revenue] or the circuit court.' " *Department of Revenue v. Sanborn Tel. Coop.,* 455 N.W.2d 223, 225 (S.D.1990) (alterations in original) (quoting *Midcontinent Broad. Co. v. Revenue Dep't,* 424 N.W.2d 153, 154 (S.D.1988)).

## DECISION

[¶ 8.] **Whether the samples purchased from out-of-state providers for Robinson's customers were sold in the regular course of business and, thus, not subject to the South Dakota use tax.**

■ [¶ 9.] According to the Department, Robinson is a provider of research services and failed to pay the required use tax on certain samples used in providing research services to its customers. Robinson argues, on the other hand, that these samples are sold as part of the report sold to its customers in the regular course of business and, therefore, are exempt from the use tax. The issue before this Court is whether the samples purchased by Robinson were purchased for resale, i.e., sold in the regular course of business.

[¶ 10.] SDCL 10–46–2 provides a tax on tangible personal property purchased for use in the state:

An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for use in this state at the same rate of percent of the purchase price of said property as is imposed by

§§ 10–45–2 and 10–45–3 or amendment which may hereafter be made thereto.

[¶ 11.] A "Use" is defined as including "the exercise of right or power over tangible personal property incidental to the ownership of that property, *except that it does not include the sale of that property in the regular course of business.*" SDCL 10–46–1(12) (emphasis added). "We understand this to mean that use tax, consistent with its complementary relationship to sales tax, generally applies to retail transactions and not to transactions where items are purchased for resale." *Sioux Falls Newspapers, Inc. v. Secretary of Revenue,* 423 N.W.2d 806, 810 (S.D.1988); *see also Sanborn Tel. Coop.,* 455 N.W.2d at 225.

█ [¶ 12.] To assist in making this determination of whether the samples were sold in the regular course of business, a court examines the essence of the transaction between Robinson and its customers. *Questar Data Sys., Inc. v. Commissioner of Revenue,* 549 N.W.2d 925, 928 (Minn. 1996) (citations omitted). A review of this record discloses the Department's auditor made no investigation regarding the essence of the transaction, and merely examined bare invoices. Further, a review of the auditor's testimony reveals he had no idea as to the taxpayer's business. Nevertheless, we must consider whether the sample was an inextricable part of the finished product. *Sioux Falls Newspapers,* 423 N.W.2d at 811 (holding that syndicated columns are an "inextricable part of the definition of a newspaper," composing the very essence of a newspaper and, thus, were not subject to use tax); *c.f. Thermoset Plastics,* 473 N.W.2d at 139–40 (holding poly pails were not "essential ingredient" of finished product, therefore, not entitled to exemption under SDCL 10–46–9). In determining whether material was part of a final product under SDCL 10–46–9, this Court stated in *Thermoset Plastics:*

> [T]he rule evolves that material which only accidentally or incidentally becomes

incorporated into a finished product, and which is not an essential ingredient of the finished product, is subject to use tax. This rationale is grounded upon the recognition that such material is not an ingredient or component part of tangible personal property either manufactured, fabricated or compounded for ultimate sale at retail.

473 N.W.2d at 140. Therefore, in the present case, if the sample is an ingredient essential to and incorporated within the final product, the samples are not subject to the use tax.

[¶ 13.] In *Questar Data Systems,* 549 N.W.2d at 927, the Supreme Court of Minnesota addressed similar facts involving the issue of whether printed materials used in conducting surveys were sold in the regular course of business and, therefore, not subject to the use tax. Questar, a Minnesota corporation, was also a survey-based research firm, providing a number of "consulting and data processing services to its customers, including data tabulation and analysis, development and design of printed materials, and preparation of reports." *Questar,* 549 N.W.2d at 927. Questar purchased and transferred printed materials in providing research services. *Id.* The Minnesota Supreme Court held that, since Questar did not exercise any right or power of ownership over the materials, the transfer of the printed materials from Questar to its customers constituted a sale of property to the customers in the regular course of Questar's business. *Id.* at 928. The court reasoned:

> [T]he printed materials are designed for the customer's needs, and in and of themselves, do not contain any information useful to Questar.... This use of the printed materials comes well after and is secondary to the customers' use of the printed materials. Further, while Questar may tabulate and/or analyze the information contained on the printed materials which are returned, Questar has no ownership interest in the information itself. Finally, Questar transfers

the title of the printed materials to the customer[.]

*Id.* Considerations of such facts convinced the court the transfer of printed materials to customers constituted a sale of property in the regular course of its business. *Id.* at 929. Likewise, in the present case, every sample was tailored to the needs of the customer. Robinson did not purchase these samples for personal use. *See Sioux Falls Newspapers*, 423 N.W.2d at 811. The samples are inextricably incorporated into the final product and then transferred to the customer. The sample is purchased strictly for the customer and its use is strictly limited.[3] Furthermore, agreements between Robinson and its customers often provided that: "At all times during this program, any lists acquired by [Robinson] either directly or indirectly from or for [customer] remain the sole property of [customer] and cannot be used or sold by [Robinson] or anyone else without [customer's] expressed written permission." Once the finished product was provided to client along with the sample, the sample was destroyed in accordance with contract and Robinson could make no further use of it. While Robinson sold the

samples at cost, and received no profit, this does not negate the fact that the samples were sold. "Sale" is defined as "any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration." SDCL 10–45–1(8).

[¶ 14.] Considering the foregoing, and under the facts and contracts of this case, we determine these samples were an essential part of the final product sold to Robinson's customers. The samples were purchased for incorporation into the final product and then sold in the ordinary course of business. Consequently, the samples are not subject to the use tax under SDCL 10–46–2. *See Sioux Falls Newspapers*, 423 N.W.2d at 811. Therefore, we affirm the trial court's reversal of the assessment.

[¶ 15.] Affirmed.

[¶ 16.] MILLER, Chief Justice, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 17.] SABERS, Justice, dissents.

---

3. For example, the licensing agreement Robinson had with Survey Sampling, Inc., provided strict limitations on use of the samples:

**Limitation on Use of the Samples.** All samples developed by SSI for CLIENT under the terms of this Agreement remain the sole property of SSI and are to be used by CLIENT only for the purposes of conducting survey research. CLIENT AGREES NOT TO USE ANY INFORMATION CONTAINED IN AN SSI SAMPLE TO GENERATE ADDITIONAL SAMPLE.

Likewise, the agreement between Robinson and American Business Lists provided limitations on the use:

**Limitations on Use.** Customer may rent information for confidential use by the Customer within one year from the date of rental to the Customer. Except with written consent. Customer shall not:

(i) rerent the information or otherwise permit any use of the information by or for the benefit of any part other than Customer;

(ii) publish, distribute or permit disclosure of the information, other than to

employees and agents of the Customer for use in the Customer's business;

(iii) use or permit use of the information for the purpose of compiling, enhancing, verifying, supplementing, adding to, or deleting from any mailing list, geographic or trade directories, business directories, classified directories, classified advertising, or other compilation of information which is sold, rented, published, furnished or in any manner provided to a third party;

(iv) use or permit use of the information for generating any statistical information which is sold, rented, published, furnished or in any manner provided to a third party;

(v) use or permit use of the information to prepare any comparison to other information data bases, which is sold, rented, published, furnished or in any manner provided to a third party; or

(vi) use or permit use of the information in connection with individual credit, employment or insurance applications.

SABERS, Justice (dissenting).

[¶ 18.] **The use tax applies in this case because we are dealing with tangible personal property that was used, stored and consumed within the State of South Dakota. The claimed exemptions of SDCL 10–46–1(12) and 10–46–9 do not apply because the property was not purchased for resale nor was it an integral part of the product sold to its clients.**

[¶ 19.] Robinson provides the following services to its clients: (1) full service custom research; (2) fund-raising services; and (3) grass roots telecommunications services. Most of its work is performed through telephone surveys. Depending on which service is being provided to its client, Robinson will purchase either customized lists, samples, or telematching from out-of-state providers. Robinson purchases the right to use lists of names, addresses, and phone numbers from American Business Lists or the right to use samples from Survey Sampling. It does not purchase the lists/samples themselves. Instead, it purchases a right to use the lists/samples for the limited purpose of completing the client's research project. Sales tax was not charged to Robinson from these out-of-state providers.

[¶ 20.] Robinson made judicial admissions, on the face of its "Amended Request for Hearing," that the lists, samples and telematching are tangible personal property. It did not raise the issue that the lists were not tangible personal property at the trial court level and cannot be allowed to do so now.

### STANDARD OF REVIEW

[¶ 21.] "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by [DOR] or the

4. SDCL 10–46–2 provides:
   An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for

circuit court." *Dept. of Revenue v. Sanborn Tel. Co–Op.*, 455 N.W.2d 223, 225 (S.D.1990).

### [¶ 22.] 1. THE USE TAX APPLIES TO THESE FACTS

[¶ 23.] Under SDCL 10–46–2, if one purchases tangible personal property to use, store or consume in South Dakota, a use tax is imposed.[4] *See Matter of Thermoset Plastics, Inc.*, 473 N.W.2d 136, 138–39 (S.D.1991) (stating "SDCL 10–46–2 imposes use tax on the *privilege of using* in South Dakota tangible personal property that is purchased for use in the state") (emphasis in original). It is NOT a tax on property itself. *Friessen Const. Co., Inc. v. Erickson*, 90 S.D. 60, 238 N.W.2d 278, 281 (1976). "Use" is defined by SDCL 10–46–1(12): "the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it does not include the sale of that property in the regular course of business."

[¶ 24.] As stated above, Robinson made judicial admissions that the lists/samples were tangible personal property. These lists/samples were used, stored and consumed in South Dakota and Robinson had qualified ownership (SDCL 43–2–6) thereof. *See also Friessen*, 238 N.W.2d at 280 (imposing a use tax on construction firms who used tangible personal property in the performance of a contract, even though the property was not owned by the construction firms). Clearly, the use tax applies. The next step is to determine whether either claim of exemption from taxation applies.

### STANDARD FOR EXEMPTION FROM TAXATION

[¶ 25.] "Statutes exempting property taxation should be strictly construed in

use in this state at the same rate of percent of the purchase price of said property as is imposed by §§ 10–45–2 and 10–45–3 or amendment which may hereafter be made thereto.

favor of the taxing power." *Thermoset,* 473 N.W.2d at 139 (citation omitted). "The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption." *Id.* (citation omitted). "[W]e construe the statute strictly against the party claiming the exemption." *Sanborn,* 455 N.W.2d at 225 (citation omitted). "Doubts are resolved in favor of taxation." *Id.* (citation omitted).

## [¶ 26.] 2. ROBINSON'S FIRST CLAIM OF EXEMPTION FROM TAXATION

[¶ 27.] Robinson claims that the lists/samples are exempt from use tax under SDCL 10–46–1(12) because they were purchased for resale to its clients. The "[u]se tax generally applies to retail transactions and not to transactions where items are purchased for resale." *Id.* (citation omitted). In order for Robinson to prevail on this argument, it must prove: (1) that it actually made a sale of the list/samples, and (2) that the sale occurred in the regular course of their business. *Id.*

[¶ 28.] In this case, Robinson purchased tangible personal property, lists/samples, in order to offer its services to its clients. Robinson's clients were purchasing Robinson's services including the ultimate database that it generated by presenting questionnaires to people named on the list/sample. The lists/samples were attached to the report, but were not the focus of the contract between Robinson and its clients, rather the service of generating the database was the contractual object. Even Robinson stated: "[t]he end use is not the phone numbers themselves . . . ." Thus, the primary purpose in purchasing the lists and samples was not to resell them, but to use them to fulfill its contractual obligations.

[¶ 29.] In asserting that the samples were actually resold, Robinson stated: "The fallacy of [DOR's] argument is that the sample ultimately goes to Robinson's client, so how else would it get to Robinson's client unless it were resold to the client by Robinson?" Correctly analyzed, Robinson purchases the sample for the limited purpose of compiling the database. After the database is completed, the sample can no longer be used, pursuant to Robinson's contract with its supplier. So, when this sample is supplied to the client, it is useless; it is nothing more than a piece of paper. Basically, Robinson's assertion is that mere attachment of the sample to the final report circumvents the application of the use tax. Clearly, Robinson did not purchase the samples or lists with the intention of reselling them. The lists were nothing more than equipment or supplies necessary to provide the services to the client. The cost of the list/sample was passed on to the client, but every business passes its costs of doing business onto the consumer. Therefore, that factor has little effect in this instance.

## [¶ 30.] 3. ROBINSON'S SECOND CLAIM OF EXEMPTION FROM TAXATION

[¶ 31.] Robinson alternatively claims that the lists/samples are exempt from use tax, pursuant to SDCL 10–46–9, because they become an integral part of the database that is sold to its clients. Before the exemption of SDCL 10–46–9 [5] applies, the "material must be an integral or component part of the finished product. . . ." *Thermoset,* 473 N.W.2d at 139. Therefore, in order to prevail, Robinson must prove

---

5. SDCL 10–46–9 provides:

The use in this state of tangible personal property including containers, labels and shipping case thereof which is intended shall, by means of fabrication, compounding or manufacture become a part of other tangible personal property intended to be sold ultimately at retail within or without the State of South Dakota, is hereby specifically exempted from the tax imposed by this chapter. The term tangible personal property shall be construed to include without limiting the meaning of said term, raw material and newspaper print.

that the lists/samples are an integral component of the database it compiles for the client. We have stated that "material which only accidentally or incidentally becomes incorporated into a finished product, and which is not an essential ingredient of the finished product, is subject to use tax." *Id.* at 140–41 (adhering to DOR's argument that "items used and consumed ... in [the] manufacturing process, but which are not intended components of the final product, do not qualify for the exemption"). Incidental is defined as: "[d]epending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." BLACK'S LAW DICTIONARY 762 (6th ed.1990).

[¶ 31.] The court, in *Sanborn Tel. Co-Op.*, 455 N.W.2d at 226, dealt with this same claim of exemption. In that case, a telephone company purchased directories from out-of-state printers and paid no sales tax on them. *Sanborn*, 455 N.W.2d at 224. It claimed that the telephone "directories and guides [were] an 'integral part' of their product and that their cost [was] calculated into the service rates, thus evidencing a resale." *Id.* at 225. In finding there was no resale, we stated: "although the publications are important to their cost of doing business, so are other goods and services purchased by them. They have not, nor could they assert that they are exempt from sales or use tax for their purchase of equipment, lines, etc." *Id.* at 226.

[¶ 32.] In this case, the customers are purchasing the compiled database from Robinson. Even by Robinson's own words ("[t]he end use is not the phone numbers themselves"), the list/sample is incidental to the principal purpose of the contract: the database. When delivering the database to the client, Robinson attaches the list/sample to the database, but the client obtains no rights to use it. The list/sample is merely a necessary cost incurred to accomplish the principal product that the client sought. Thus, the list/sample is merely an incidental component to the compiled database and it is not exempted under SDCL 10–46–9.

[¶ 33.] Because these transactions are not exempt, i.e., there was no resale of the lists/samples and the lists/samples are incidental to the principal product, the tangible personal property is subject to use tax. Therefore, I dissent to the majority opinion and would reverse and remand to the circuit court.