#26795, #26805-aff in pt & rev in pt-DG

**2014 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *


PAUL NELSON FARM,        Appellee,

v.

SOUTH DAKOTA
DEPARTMENT OF REVENUE,      Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA DEVANEY
Judge

* * * *

JUSTIN LEE BELL
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota        Attorneys for appellee.


JOHN T. RICHTER
South Dakota Department of Revenue
Pierre, South Dakota        Attorneys for appellant.

* * * *

ARGUED ON MARCH 25, 2014

OPINION FILED **05/21/14**

GILBERTSON, Chief Justice

[¶1.] The Department of Revenue and Regulation conducted an audit on Paul Nelson Farm and assessed use tax and interest against Paul Nelson Farm for its purchases of food, beverages, and ammunition. Paul Nelson Farm contested the assessment of use tax and appealed to the circuit court. The circuit court held Paul Nelson Farm was not liable for use tax on food, but was liable for use tax on beverages and ammunition. The Department appeals the decision of the circuit court, arguing Paul Nelson Farm owes tax on all three categories of goods. Paul Nelson Farm responds that its possession of these goods does not constitute "use" under the taxing statute, because they are purchased for sale in the regular course of business. We affirm in part and reverse in part, holding that use tax is not properly imposed on any of these goods.

## FACTS

[¶2.] Paul Nelson Farm, a South Dakota corporation, operates an all-inclusive hunting lodge near Agar, South Dakota. A typical hunting package at Paul Nelson Farm includes three days of pheasant hunting with the lodge's guides and dogs, overnight lodging, all meals and beverages, unlimited use of a private sporting clays range, ammunition, use of a shotgun, and five pheasants per day with accompanying bird-cleaning and packaging services. Customers are charged a single "package price" for all of these items, with the option to shoot additional birds for an extra fee.[1] Customers are not given the option to purchase any of the items

---

1. A typical package costs between $4,395 and $5,895 per person, depending on group size.

separately; they must be purchased as an all-inclusive hunting package. Upon request, Paul Nelson Farm would provide customers with an itemized receipt allocating costs to various portions of the hunting package.[2]

[¶3.]    Paul Nelson Farm collected and timely remitted sales tax on each hunting package sold to its customers. When Paul Nelson Farm purchased food, non-alcoholic beverages, and ammunition, it did not pay sales or use tax on these items. The Department conducted an audit on Paul Nelson Farm covering November 2006 to October 2009 and determined that Paul Nelson Farm owed use tax and interest totaling $29,428.06. The assessment included $17,405.14 in tax and interest for unpaid use tax on food, beverages, and ammunition.

[¶4.]    Paul Nelson Farm requested an administrative hearing to contest this portion of the assessment. At the administrative hearing, Paul Nelson Farm asserted that the food, beverages, and ammunition were not purchased for end use by Paul Nelson Farm, but were instead purchased for resale to hunting lodge customers in its ordinary course of business. Accordingly, Paul Nelson Farm

---

2.    For instance, the itemized receipt for one hunter in 2007 indicated the following cost breakdown:

| | |
|---|---|
| Guided Hunting | $2400 |
| Lodging | $1495 |
| 4 Buffet Breakfasts @ $25 | $100 |
| 3 Buffet Lunches @ $35 | $105 |
| 4 Buffet Dinners @ $75 | $300 |
| 1 Case Field Ammo | $175 |
| 1 Case Target Ammo | $125 |
| Bird Cleaning & Packaging | $ 195 |
| Total* | $4,895 |

*Plus S.D. Sales Tax 5%

argued it was not required to pay use tax on those items. The Hearing Examiner rejected this reasoning and entered a proposed decision affirming the Department's assessment of the use tax. The Examiner's proposed order was adopted in full by the Department Secretary. Paul Nelson Farm appealed the order to the circuit court. The circuit court affirmed in part and reversed in part, holding that Paul Nelson Farm was not required to remit use tax on the food, but was required to remit use tax on the beverages and ammunition.

[¶5.] The circuit court held that Paul Nelson Farm's final product consisted of three essential parts: 1) lodging, 2) hunting, and 3) three full buffet meals per day. The court determined that the food provided to customers had value independent from the hunting and lodging services provided and that customers took this value into consideration when deciding whether to purchase the package. Therefore, the circuit court held that a sale of the food occurred between Paul Nelson Farm and its customers and use tax should not be assessed against Paul Nelson Farm. Conversely, the court held that the ammunition and beverages were consumed in providing the service and customers would likely pay the same package price had these items not been included. Thus, it held that use tax was appropriate on the beverages and ammunition.

[¶6.] On appeal to this Court, the Department requests that we reverse the circuit court's decision and uphold the Department's assessment of use tax on the food purchased by Paul Nelson Farm. Paul Nelson Farm filed a Notice of Review asserting that use tax should not be imposed on the beverages and ammunition in question.

**STANDARD OF REVIEW**

[¶7.] "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court." *Butler Machinery Co. v. S.D. Dep't of Revenue*, 2002 S.D. 134, ¶ 6, 653 N.W.2d 757, 759-60 (quoting *Robinson & Muenster Assocs., Inc. v. S.D. Dep't of Revenue,* 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612). "[O]n questions of law, we may 'interpret statutes without any assistance from the administrative agency.'" *In re State Sales & Use Tax Liab. of Pam Oil, Inc.*, 459 N.W.2d 251, 255 (S.D. 1990) (citation omitted).

**ANALYSIS AND DECISION**

[¶8.] The question before this Court is whether the food, beverages and ammunition purchased by Paul Nelson Farm and included as part of an all-inclusive hunting package are subject to South Dakota use tax. SDCL 10-46-2 provides:

> An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased for use in this state at the same rate of percent of the purchase price of said property as is imposed pursuant to chapter 10-45.[3]

Furthermore, SDCL 10-46-4 states:

> In addition, said tax is hereby imposed upon every person using, storing, or otherwise consuming such property within this state until such tax has been paid directly to a retailer or the secretary of revenue as hereinafter provided.

---

3.    SDCL chapter 10-45 codifies South Dakota sales tax.

[¶9.]     The Department contends that Paul Nelson Farm owes use tax on the food, beverages, and ammunition under SDCL 10-46-2 and SDCL 10-46-4 because Paul Nelson Farm purchased these items without paying the sales tax imposed by SDCL 10-45-2. The Department argues that Paul Nelson Farm is the end consumer of these goods as a service provider and that there are no applicable use tax exemptions for goods incorporated into a service. Paul Nelson Farm, however, contends that it does not owe use tax because its control over the goods did not constitute "use" as defined by SDCL 10-46-1(17).

[¶10.]     Accordingly, this Court is called upon to interpret the meaning of "use" under the applicable South Dakota statutes. "When engaging in statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *State v. Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d 610, 614 (citations and internal quotation marks omitted).

[¶11.]     The parties argue at length over whether this case involves the imposition of a tax or an exemption from a tax. "Statutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body. Statutes exempting property from taxation should be strictly construed in favor of the taxing power. The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the statute." *Butler Machinery*, 2002 S.D. 134, ¶ 6, 653 N.W.2d at 759-60 (citations omitted). However, because the

language of the statute is clear, certain, and unambiguous we need not resort to statutory construction in this case. We instead declare the meaning of the statute as clearly expressed, without application of the rules of construction advanced by either party.

[¶12.]     SDCL 10-46-1(17) defines "use" as including "the exercise of right or power over tangible personal property" but not "the sale of that property in the regular course of business."[4] "We understand this to mean that use tax, consistent with its complementary relationship to sales tax, generally applies to retail transactions and not to transactions where items are purchased for resale." *Robinson & Muenster*, 1999 S.D. 132, ¶ 11, 601 N.W.2d at 613 (quoting *Sioux Falls Newspapers, Inc. v. Sec'y of Revenue,* 423 N.W.2d 806, 810 (S.D. 1988)).

[¶13.]     To determine under SDCL 10-46-1(17) whether the food, beverages, and ammunition were purchased for "the sale of that property in the regular course of business," we must examine whether there was a "sale" of the goods in question. A "sale" is defined in the sales tax statute as "any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a

---

4.     SDCL 10-46-1(17) provides:

> "Use," the exercise of right or power over tangible personal property or any product transferred electronically incidental to the ownership of that property, except that it does not include the sale of that property in the regular course of business. Use also includes the use of the types of services, the gross receipts from the sale of which are to be included in the measure of the tax imposed by chapter 10-45, and the delivery or causing delivery into this state of tangible personal property or any product transferred electronically intended to advertise any product or service or promote or facilitate any sale to South Dakota residents.

consideration[.]" SDCL 10-45-1(12). In this case, the transaction between Paul Nelson Farm and its customers constitutes a sale within this definition.

[¶14.] Initially, we note that the goods in question were subjected to a "transfer, exchange, or barter." Transfer means "the conveyance of right, title, or interest in real or personal property from one person to another by sale, gift, or other process[.]" *Webster's Third New International Dictionary* 2427 (1976). When Paul Nelson Farm's customers pay the package price, it includes the use and consumption of an unlimited amount of food, beverages, and ammunition during their stay. While staying at Paul Nelson Farm, the food and beverages are transferred to the customers' actual possession. The customers have the right to eat and drink as much as they would like. Similarly, when the customers go into the field or onto the sporting clays range, they are given the right to use an unlimited amount of ammunition.

[¶15.] The Department disputes that any transfer occurs by arguing that the goods are instead fully incorporated into a service and thereby used and consumed by Paul Nelson Farm. The Department compares Paul Nelson Farm to a janitor, who uses cleaning supplies to enhance or improve the service purchased by his customer. However, this analogy ignores the actual transfer of goods occurring in this case. A janitor's customer never gains a right or interest in the janitor's cleaning supplies.[5] To the contrary, Paul Nelson Farm's customers are given a

---

5. The Department makes a similar comparison using a barber shop's use of hairstyling products. The Department states that the pertinent questions are "Who will use the property?" and "Where will the property be used?" However, in this case it is the customer and not the service provider who

(continued . . .)

right to the food, beverages, and ammunition. Ultimately, it is the customers who decide what quantity of these goods is consumed. Granted, this transfer is not without conditions. Similar to the transfer of goods at any all-you-can-eat buffet, customers at Paul Nelson Farm must consume the purchased goods onsite, during the timeframe paid for by the customer.

[¶16.] The goods in this case are also transferred "for consideration."[6] We have noted that to determine whether something was purchased for sale in the regular course of business, it is helpful to look to the "essence of the transaction." *Robinson & Muenster*, 1999 S.D. 132, ¶ 12, 601 N.W.2d at 613. The price paid in this case is for a package deal. The hunting guide services are arguably the most important part of the package. However, we agree with the circuit court's determination that Paul Nelson Farm's customers place value upon the unlimited food they are provided as part of the package. We disagree with the circuit court that the beverages and ammunition did not entice similar consideration.

[¶17.] Beverages provided in a normal hotel lobby may be offered as a "convenience to the guest" not contemplated in the exchange between hotel and guest. However, when a customer purchases an "all-inclusive" experience, like

---

(. . . continued)
actually controls the use and consumption of the product, unlike the cleaning supplies used by a janitor or the hairstyling products used by a barber.

6. Consideration is "[a]ny benefit conferred or agreed to be conferred upon the promiser by any other person to which the promiser is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promiser[.]" *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 33, 698 N.W.2d 555, 569 (citation omitted).

those advertised by Paul Nelson Farm, unlimited beverages are expected by the customer. Similarly, the unlimited ammunition is an advertised portion of the package and therefore expected by the customer. Neither the beverages nor the ammunition are of nominal value. Accordingly, the customers give consideration for these items as part of the bargained-for exchange with Paul Nelson Farm—just as the circuit court determined the customers give consideration for the food in question.

[¶18.] The Department downplays the importance of the food, beverages, and ammunition in the transaction. It asserts that Paul Nelson Farm is the end consumer, providing these goods without consideration as a convenience to the guest "in order to enhance the hunting experience." To support this argument, the Department points to *Kehl v. Iowa Dep't of Revenue & Finance*, 2002 WL 31882962 (Iowa App. 2002) (unpublished). In *Kehl*, the Iowa Court of Appeals reasoned that food provided to riverboat cruise guests was subject to use tax, because the food was part of a package deal and the customers did not "separately bargain" for the food. *Id.* at *3. Because there was no separate bargaining for the food, the court held that there was no resale. *Id.* However, the reasoning in *Kehl* does not comport with our decisions in *Sioux Falls Newspapers*, 423 N.W.2d 806 and *Robinson & Muenster*, 1999 S.D. 132, 601 N.W.2d 610.

[¶19.] In *Sioux Falls Newspapers*, we held that the Argus Leader was not liable for use tax on syndicated materials because the materials were not purchased for "personal use," but were instead to be incorporated into a newspaper and resold in the regular course of business. 423 N.W.2d at 811. Purchasers of the Argus

Leader were not able to separately bargain for each individual syndicated article within a newspaper. Yet, we held that a retail sale of the syndicated material occurred when the Argus Leader sold the completed newspapers. *Id.*

[¶20.] In *Robinson & Muenster*, we likewise rejected an attempt by the Department to impose use tax on items incorporated into a larger final product. 1999 S.D. 132, ¶ 14, 601 N.W.2d at 614. The taxpayer in that case was a research, fundraising, and telecommunications business in Sioux Falls that provided research and polling services tailored to individual customers' needs. *Id.* ¶¶ 2-3. In order to conduct its research, the taxpayer would purchase data samples encompassing certain demographic groups or geographic regions. *Id.* These data samples were eventually transferred to the customer along with the final research report produced by the taxpayer for the customer. *Id.* ¶ 3. By contractual agreement, the data samples in the taxpayer's possession were then destroyed and not re-used by the taxpayer. *Id.* ¶ 13. The Department argued that because the samples were incorporated into a service provided by the taxpayer, they were used by the taxpayer and not purchased for resale to the customer. *Id.* ¶ 9. Although the taxpayer sold the samples at cost and the samples were just one portion of the final product transferred to the customer, this Court held that the samples were sold in the regular course of business. *Id.* ¶¶ 13-14. The holding did not depend on whether the customer separately bargained for the samples. Rather, we determined that the samples were an "essential part" of the final product sold to the customer, and as such were purchased by the taxpayer for sale in the regular course of business. *Id.* Given our decisions in *Robinson & Muenster* and *Sioux Falls*

*Newspapers* rejecting use tax imposed on goods incorporated into a final product, we decline to apply Iowa's "not separately bargained for" analysis in this case.

[¶21.]     The Department also asserts that ARSD 64:06:02:75 supports its position that Paul Nelson Farm does not purchase food, beverages, and ammunition for sale in the regular course of business, because these items are simply offered as a convenience to the guest.  ARSD 64:06:02:75 provides in part:

> **Lodging establishments.**  Sales of supplies and equipment to a lodging establishment are taxable.  Lodging establishments are the consumers of supplies and equipment which are consumed or used by them in rendering their services.  If the sales tax on such items is not paid to a South Dakota licensed supplier when they are purchased, the cost of such items must be reported as a use tax item on the sales tax return.  Examples of such items include paper cups, plastic cups, laundry bags, soap, shower caps, toilet tissue, facial tissue, shoe polish, toilet bands, stationary, consumables and refreshments provided as a convenience to the guest, cleaning products, and other items consumed on the premises by the lodging establishment.

[¶22.]     The Department asserts that ammunition, food, and beverages all are "consumables" under this rule and that ammunition could also be considered "supplies and equipment."  Accordingly, the Department argues that Paul Nelson Farm is the consumer or user of the food, beverages, and ammunition by administrative rule.  "An agency is usually given a reasonable range of informed discretion in the interpretation and application of its own rules when the language subject to construction is technical in nature or ambiguous, or when the agency interpretation is one of long standing."  *Krsnak v. S.D. Dep't of Env't & Natural Res.*, 2012 S.D. 89, ¶ 16, 824 N.W.2d 429, 436.  However, the Department's application of this rule is misplaced.

[¶23.] The food, beverages, and ammunition purchased by Paul Nelson Farm are not simply provided "as a convenience" to Paul Nelson Farm's customers as described by this rule. Unlike items listed in ARSD 64:06:02:75 such as soap, shower caps, and napkins, the food, beverages, and ammunition promised to Paul Nelson Farm's customers as part of the package purchase price have significant value. As described above, they are part of the bargained-for exchange between the parties. When the average hotel guest pays for a room, however, the shampoo provided by the hotel is usually not advertised, nor does its availability usually affect whether or not the guest will rent the room. Thus, the "convenience" items listed in the administrative rule are materially distinguishable.

[¶24.] Furthermore, "[r]ules adopted in contravention of statutes are invalid." *In re Yanni*, 2005 S.D. 59, ¶ 16, 697 N.W.2d 394, 400 (citing *Cavanagh v. Coleman,* 72 S.D. 274, 277, 33 N.W.2d 282, 284 (1948)). Neither an agency nor this Court should "enlarge the scope of the statute by an unwarranted interpretation of its language." *Id.* ¶ 15 (citation omitted). *See also In re Aiken*, 296 N.W.2d 538, 540 (S.D. 1980). Thus, even if "consumables" under the administrative rule did encompass the purchases made by Paul Nelson Farm, the rule's application cannot outstep the bounds of the use tax statute. *State ex. rel. Ewing v. Prudential Ins. Co. of Am.*, 273 N.W.2d 111, 114-15 (S.D. 1978). None of the arguments raised by the Department convince us that a plain reading of the use tax statute imposes a use tax upon the food, beverages and ammunition purchased by Paul Nelson Farm. What is not taxed by statute cannot be taxed by administrative rule, even if the

items in question were to fall squarely within the rule's description of taxed items. *Id.*

[¶25.] Last, because we conclude there was a sale of the goods in question, we must determine whether that sale was "in the regular course of business." SDCL 10-46-1(17). The Department argues that Paul Nelson Farm's regular course of business is providing hunting services—not selling food, beverages, and ammunition. The Department asserts that as a business primarily providing hunting guide services, Paul Nelson Farm is distinguishable from a retail establishment like a grocery store, restaurant, or ammunition store. The Department notes that Paul Nelson Farm's customers are not able to leave with these goods, nor are members of the general public ordinarily welcome to purchase these goods without purchasing a complete hunting package. Accordingly, the Department argues that Paul Nelson Farm should pay use tax on these items because they are not sold by Paul Nelson Farm in the regular course of business.

[¶26.] The Department adopts too narrow an interpretation of the phrase "in the regular course of business." Under the Department's argument, for a sale of tangible personal property to be "in the regular course of business," the sale of that particular property must be the entity's primary or predominant business.[7] This

---

7. This Court has previously rejected similar attempts by the Department to narrow the definition of sale "in the regular course of business." *See, e.g., Sioux Falls Newspapers*, 423 N.W.2d at 811 (rejecting Department's argument that Argus Leader's regular business was selling newspapers, not syndicated materials); *MidContinent Broad. Co. v. Dep't of Revenue*, 424 N.W.2d 153, 154-55 (S.D. 1988) (rejecting Department argument that syndicated materials were consumed by MidContinent as end-product in order to provide regular business of providing programmed broadcast time).

interpretation is not supported by a plain reading of the statute. "Regular" means "steady or uniform in course, practice, or occurrence." *Webster's Third New International Dictionary* 1913 (1976). We therefore do not ask whether customers come to Paul Nelson Farm primarily for hunting experiences or whether they instead come primarily for food, beverages, and ammunition. Instead, we examine whether the sale of food, beverages, and ammunition is in Paul Nelson Farm's "steady or uniform" business practice. The record reflects that a sale of these items happens every time a Paul Nelson Farm customer purchases an all-inclusive hunting package. Thus, we conclude that the sale of these goods—although part of a larger transaction—is a steady and uniform occurrence in Paul Nelson Farm's business. The sale of these goods is therefore a sale "in the regular course of business" under SDCL 10-46-1(17).

**CONCLUSION**

[¶27.]    In sum, we conclude that Paul Nelson Farm does not owe use tax on the food, beverages, and ammunition in question under SDCL 10-46-2 or SDCL 10-46-4. The items were purchased for resale to Paul Nelson Farm's customers in the regular course of business. Accordingly, Paul Nelson Farm's control and possession of these items does not constitute "use" as defined by SDCL 10-46-1(17). Therefore, we affirm in part and reverse in part.

[¶28.]    KONENKAMP and SEVERSON, Justices, and SABERS, Circuit Court Judge, and MEIERHENRY, Retired Justice, concur.

[¶29.]    SABERS, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶30.]     MEIERHENRY, Retired Justice, sitting for WILBUR, Justice, disqualified.