#27413-a-JMK
**2016 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BLACK HILLS TRUCK &
TRAILER, INC.
License No. 1020-0886-ST,

DAKOTA VOLVO TRUCKS, INC.
License No. 1015-3946-ST,

NORTH CLIFF USED & REBUILT
TRUCK PARTS, INC.
License No. 1016-4988-ST,

SFK LEASING, INC.
License No. 1015-0596-ST,

SIOUX FALLS KENWORTH, INC.
License No. 1015-4684-ST,

SIOUX FALLS TRAILER SALES,
INC. (SIOUX FALLS, SD)
License No. 1016-0511-ST,

and

SIOUX FALLS TRAILER SALES,
INC. (WATERTOWN, SD)
License No. 1016-0513-ST,                          Appellants,

v.

SOUTH DAKOTA
DEPARTMENT OF REVENUE,                          Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE DOUGLAS E. HOFFMAN
Judge
* * * *

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016
OPINION FILED **06/22/16**

DAVID L. EDWARDS
Breit Law Office, PC
Sioux Falls, South Dakota                    Attorneys for appellants.


ROSA YAEGER of
South Dakota
 Department of Revenue
Pierre, South Dakota                         Attorneys for appellee.

* * * *

#27413

KERN, Justice

[¶1.]     The South Dakota Department of Revenue subjected Black Hills Truck & Trailer and other corporations owned by North American Truck & Trailer, Inc., (collectively Taxpayers) to a sales-and-use-tax audit.  The audit uncovered errors regarding Taxpayers' reporting of use tax.  The Department assessed Taxpayers for unpaid use taxes.  Taxpayers paid the assessment under protest and demanded an administrative hearing.  At the hearing, Taxpayers argued that the shop supplies assessed were exempt from use tax because they were purchased for resale to customers.  Taxpayers offered an invoice demonstrating a typical transaction in support of their position.  The hearing examiner declined to consider the invoice because Taxpayers submitted it more than 60 days after the audit began, in violation of SDCL 10-59-7.  Upon appeal, both the Department and the circuit court affirmed the exclusion of the exhibit and the assessment.  Taxpayers appeal.  We affirm.

## Facts

[¶2.]     North American Truck & Trailer, Inc., owns Black Hills Truck & Trailer, Inc., and several other truck and trailer dealerships in various cities in South Dakota.[1]  These dealerships perform multiple services related to the lease, sale, and repair of trucks, trailers, and similar equipment.

---

1.     Taxpayers include Black Hills Truck & Trailer, Inc., Dakota Volvo Trucks, -Inc., North Cliff Used & Rebuilt Truck Parts, SFK Leasing, Inc., Sioux Falls Kenworth, Inc., Sioux Falls Trailer Sales, Inc. (Sioux Falls, S.D.), and Sioux Falls Trailer Sales, Inc. (Watertown, S.D.).

[¶3.]        The Department began its audit of each corporation in September 2012.  It requested Taxpayers' tax returns, worksheets, sales reports, expense invoices, sales invoices, and other documents for the reporting periods of May 2009 through April 2012.  During the audit, the Department narrowed its focus to a one-year time frame within the audit period.  The audit uncovered what the Department believed to be use-tax errors regarding shop supplies used by Taxpayers in their repair service.  Taxpayers did not pay sales tax on the supplies at the time of purchase or use tax at the time the supplies were used and consumed.  The Department attributed the mistakes to human error rather than intent to evade taxation.  The Department assessed Taxpayers $27,691.91 in unpaid use tax.

[¶4.]        Taxpayers paid the tax under protest and requested an administrative hearing.  At the hearing on May 30, 2013, Taxpayers challenged the use tax assessment and offered exhibits in support of their position.  The Department objected to ten of Taxpayers' exhibits because Taxpayers did not present them to the auditor within 60 days from the beginning of the audit as required by SDCL 10-59-7.  The Department also objected because several of the exhibits were dated outside of the audit period.  The hearing examiner excluded the exhibits because they were not timely presented.

[¶5.]        During the hearing, the Department contended that Taxpayers had purchased shop supplies without payment of sales tax.  To determine if use tax was due, the Department divided the shop supplies into various categories.  These included shop supplies consumed during the repair of customer vehicles, shop supplies used to repair customer vehicles that become part of the vehicle, and

maintenance items used to repair Taxpayer-owned vehicles. Examples of shop supplies consumed during a repair service included: sand paper, glass cleaner, dust masks, nitrile gloves, razor blades, thinner or reducer, rubbing compound, VIS polish, bars and buffing wheels, sandblasting sand, packing tape, masking tape, solvent, shop towels, brake cleaner, carb cleaner, and drill bits. Shop supplies that became part of the customer's vehicle include products such as filters and windshield sealant. Maintenance items are things such as oils, antifreeze, and other fluids used on Taxpayer-owned vehicles.

[¶6.] The Department argued that use tax was due and owing on supplies used and consumed in the repair of customer vehicles. The Department did not assess use tax on shop supplies that were put into customers' vehicles and left the shop with the vehicles. But the Department assessed use tax on maintenance items put into Taxpayer-owned vehicles either being prepared for resale or for items used to repair leased vehicles. In response, Taxpayers alleged that none of the items were subject to use tax because they were all purchased for resale and therefore exempt.

[¶7.] When analyzing whether use tax was due, the hearing examiner considered in part whether the supplies became part of the customer's vehicle as defined in ARSD 64:06:02:58.[2] The hearing examiner affirmed the assessment,

---

2. ARSD 64:06:02:58 provides:

> All charges for repair services, including maintenance agreements, are subject to sales tax. Repair of personal property or any product transferred electronically is a service in which property is restored to or near its former condition or

(continued . . .)

finding that the Department properly distinguished between the categories of supplies and assessed the tax due on each.

[¶8.]     Taxpayers appealed the hearing examiner's decision to the circuit court. Taxpayers first alleged that because the Department had unrestricted access to all of their records during the audit, prior submission of the exhibits was unnecessary. The circuit court agreed regarding most of the exhibits holding that all but four were admissible pursuant to SDCL 10-59-7. It held that Exhibit 18—a sales invoice that described the agreement for repair services including the cost of supplies used during the repair—was not from the designated audit period and was not material evidence. Therefore, the circuit court affirmed the Department's decision to exclude Exhibit 18 under the statute.

[¶9.]     Taxpayers next argued that the supplies used were exempt from use tax because they were actually resold to customers in the regular course of business. The circuit court disagreed. It reasoned that Taxpayers were selling the repair

_____

(. . . continued)

usefulness. A person engaged in the repair business must have a sales tax license and report tax on the gross receipts.

Items purchased by a repair person which become part of the repaired property may be purchased exempt from sales tax by the repair person. The charges to the customer for the parts and service are taxable. Tools, equipment, and supplies consumed by a repair person are subject to sales tax when purchased. A business is liable for use tax on all items of tangible personal property and any product transferred electronically used by the business even though an item may have been especially fabricated to produce a product for a particular customer, is completely consumed in completing the customer's order, and the cost of the item is included in the charge to the customer.

A person who occasionally does some repair work but does not hold out to the public that the person does repair work is not considered to be in a repair business subject to sales tax.

service itself, not the supplies used during the service. The circuit court affirmed the Department's assessment of use tax.

[¶10.] On appeal, Taxpayers raise two issues:[3]

1. Whether the Hearing Examiner erred by refusing to consider Exhibit 18.

2. Whether the Hearing Examiner erred by affirming the Department's assessment of use tax on shop supplies used during the repair process.

## Standard of Review

[¶11.] The standard of review governing an agency's decision is set forth in SDCL 1-26-36. We "give great weight to the findings of the agency and reverse only when those findings are clearly erroneous in light of the entire record." *Williams v. S.D. Dep't of Agric.*, 2010 S.D. 19, ¶ 5, 779 N.W.2d 397, 400. The determination of whether a statute imposes a tax under a given factual scenario is a question of law, and our review is de novo. We give no deference to any conclusion of law reached by the circuit court or the Department. *Paul Nelson Farm v. S.D. Dep't of Revenue*, 2014 S.D. 31, ¶ 7, 847 N.W.2d 550, 554. "Statutes exempting property from taxation should be strictly construed in favor of the taxing power." *Butler Mach. Co. v. S.D. Dep't of Revenue*, 2002 S.D. 134, ¶ 6, 653 N.W.2d 757,759 (quoting *Robinson & Muenster Assocs., Inc. v. S.D. Dept. of Revenue,* 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612). "[T]he taxpayer has the burden of proving entitlement to a statutory

---

3. Taxpayers raised five issues in their docketing statement but elected to brief only two issues in this appeal. Other than by a brief reference, Taxpayers did not address maintenance items or repair software in their appellate brief. As "we will consider only those issues that the parties actually briefed[,]" these issues are waived. *Daily v. City of Sioux Falls*, 2011 S.D. 48, ¶ 10 n.6, 802 N.W.2d 905, 910 n.6.

#27413

exemption." *In re State Sales & Use Tax Liab. of Pam Oil, Inc.*, 459 N.W.2d 251, 255 (S.D. 1990).

### Analysis and Decision

[¶12.]        *1.        Whether the Hearing Examiner erred by refusing to consider Exhibit 18.*

[¶13.]        This issue concerns whether Exhibit 18, a sample invoice from outside the audit period, should have been received into evidence by the hearing examiner. Both SDCL 10-59-3 and 10-59-7 notify taxpayers that they must provide to the Department all documents evidencing reduction, deduction, or exemption of taxation to the auditor within 60 days from initiation of the audit.[4] It is undisputed that Taxpayers herein were given proper notice. The Department is not required to consider documents presented more than 60 days after the commencement of the audit. However, additional pertinent documents "shall be considered[,]" if the documents are material, there is a good reason for the failure to present them within the proper timeframe, and they are submitted within a reasonable time prior to any hearing scheduled pursuant to SDCL 10-59-9. SDCL 10-59-7.

---

4.        SDCL 10-59-3 requires each notice of intent to audit include the following statement:

> All records, books, and documents must be prepared for presentation to the auditor on the date of commencement of the audit. All documents evidencing reduction, deduction or exemption of tax not prepared for presentation within sixty days of the date of commencement of the audit need not be considered by the auditor.

-6-

[¶14.] Taxpayers argue that the invoice meets all three requirements of SDCL 10-59-7.[5] With reference to the first factor, they assert that the exhibit was material because it illustrated the resale of the products to the customer in support of their claim that the products were exempt from use tax. Exhibit 18 states, "We have included a charge equal to 8% of total cost of parts and labor, not to exceed $350.00, in the misc. charges amount for shop supplies used in connection with this repair." Taxpayers argue that other invoices considered by the Department did not explain the charges in such detail.

[¶15.] While it is true that Exhibit 18 provides more information about the charges, it does not more clearly illustrate Taxpayers' resale theory compared to other exhibits that were considered during the audit. It also describes a transaction that occurred outside the period of the audit. The admission of Exhibit 18 would not have significantly affected the hearing examiner's analysis. As it would not have added anything substantial, it was not material. Because Taxpayers failed to

---

5. SDCL 10-59-7 provides in part:

> Any documents or records required to be kept by law to evidence reduction, deduction, or exemption from tax not prepared for presentation to the auditor within sixty days from the commencement date of the audit do not have to be considered by the auditor or the secretary. However, additional pertinent papers or documents shall be considered if all the following apply:
>
> > (1) The additional pertinent papers or documents are material;
> >
> > (2) There were good reasons for failure to present other pertinent papers or documents as referenced in § 10-45-45 or 10-46-43, within the prescribed time period; and
> >
> > (3) The additional pertinent papers or documents are submitted within a reasonable time period prior to any hearing scheduled pursuant to § 10-59-9.

establish that the exhibit was material, it is unnecessary to analyze the remaining criteria. We affirm the hearing examiner's decision to exclude Exhibit 18 as untimely.

[¶16.]     *2.     Whether the Hearing Examiner erred by affirming the Department's assessment of use tax on shop supplies used during the repair process.*

[¶17.]     SDCL 10-45-2 imposes a broad-based sales tax of four-and-one-half percent.[6] The sales tax applies to a business's gross receipts from the retail sale of tangible personal property to customers or users unless specifically exempted. Likewise, the gross receipts from repair services are taxable pursuant to SDCL 10-45-5. If sales tax was not included in the price of a transaction involving taxable property, the user of such property is then required to pay use tax. *See* SDCL 10-46-2; SDCL 10-46-4; *Sioux Falls Newspapers, Inc. v. Sec'y of Revenue*, 423 N.W.2d 806, 810 (S.D. 1988).

[¶18.]     Use tax is required by SDCL 10-46-2, which provides in part that "an excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property[.]" "Use" is defined as "the exercise of right or power over tangible personal property" but does not "include the sale of that property in the regular course of business." SDCL 10-46-1(17). Use tax is complementary and supplemental to sales tax to ensure that property sold or used in the state will be taxed once for the support of state government. *Sioux Falls*

---

6.    When Taxpayers filed this appeal, the rate was four percent. The state legislature increased the amount during the 2016 legislative session. 2016 S.D. Sess. Laws ch. 65, § 1.

*Newspapers, Inc.,* 423 N.W.2d at 810, n. 3. "We understand this to mean that use tax . . . generally applies to retail transactions and not to transactions where items are purchased for resale." *Id.* at 810; *see also Paul Nelson Farm,* 2014 S.D. 31, ¶ 12, 847 N.W.2d at 555.

[¶19.]        As the shop supplies were purchased without paying sales tax, the Department issued use-tax assessments on certain transactions. As referenced above, the Department when examining the transactions divided the supplies into categories. One category included supplies *used and consumed* in the repair process, such as sandpaper and rubber gloves. The Department distinguished these supplies from those that actually become part of the customer's vehicle such as windshield sealant. The Department *did not assess use tax* on those supplies that became part of a customer's vehicle and left the shop with the vehicle. Maintenance items used on Taxpayer-owned vehicles were assessed but are not appealed herein. The only tax assessed that remains at issue is that on supplies used and consumed in the repair process.

[¶20.]        Taxpayers contend that the shop supplies are exempt from use tax because they are resold to customers as a part of Taxpayers' repair services. Taxpayers claim that they have a service contract with their customers—the sales invoice—which illustrates this charge to their customers for miscellaneous supplies. They submit this "resale" of shop supplies occurs in the regular course of business and is therefore exempt from use tax. Because their customers pay sales tax on the entire bill, Taxpayers also contend that the use-tax assessment constitutes "double

taxation." In support of their position they rely primarily on our holdings in *Paul Nelson Farm* and *Robinson*.

[¶21.]     To determine whether use tax is due we first determine whether a sale has occurred in the regular course of business. "Sale" is defined as "any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration[.]" SDCL 10-45-1(12). We recently discussed the definition of "sale" in *Paul Nelson Farm*. In that case, customers purchased a hunting package from an all-inclusive hunting lodge. 2014 S.D. 31, 847 N.W.2d 550. The package included unlimited food, beverages, and ammunition during the stay. *Id.* ¶ 2, 847 N.W.2d at 552. The Department assessed use tax on all three items, but the taxpayer alleged the goods were purchased for resale. *Id.* ¶ 4, 847 N.W.2d at 553. In analyzing the issue, we determined that the actual transfer of goods determines whether a sale occurs, even if the consideration paid by the customer is mostly for a service. *Id.* ¶ 14, 847 N.W.2d at 555. Focusing on the "essence of the transaction," we agreed with the taxpayer, found that the goods were sold in the regular course of business, and reversed the assessment. We found relevant that the sale occurred as a steady and uniform occurrence at the hunting lodge. *Id.* ¶ 26, 847 N.W.2d at 558-59. We noted that while the hunting services rendered were likely the most important component of the sale, the customers also placed value on the tangible personal property they received. *Id.* ¶ 17, 847 N.W.2d at 556.

[¶22.]     Taxpayers' reliance on *Paul Nelson Farm* is unpersuasive as that case is distinguishable from the facts of this case. The customer here gains no right or

interest in the supplies that are *used and consumed* during the Taxpayers' repair process. The customer does not drive out of the repair shop with pieces of sandpaper, drill bits, or gloves attached to the vehicle. The supplies are consumed in the repair process, and no change of ownership occurs. As the hearing examiner found, these supplies do not become part of the vehicle and are properly subject to use tax. ARSD 64:06:02:58. This applies whether the repair was to a third-party customer's vehicle, a leased vehicle, or a Taxpayer-owned vehicle.

[¶23.]    Taxpayers ask us to compare this case to *Robinson*. In *Robinson & Muenster Associates, Inc.*, we held that to determine whether something was sold in the regular course of business, "we must consider whether the [product] was an inextricable part of the finished product" that was provided to the customers. 1999 S.D. 132, ¶ 12, 601 N.W.2d at 613; *see also Sioux Falls Newspapers, Inc.*, 423 N.W.2d at 811 (holding that syndicated materials to be published in a newspaper were purchased for resale in the regular course of business when the products were "the very essence of what has been traditionally perceived as a 'newspaper'"). In *Robinson,* the taxpayer was a research and telecommunications business that performed survey and polling services for customers. 1999 S.D. 132, ¶ 2, 601 N.W.2d at 611. The taxpayer contracted with customers and then obtained samples and lists of telephone numbers (collectively, "samples") to meet the customers' exact specifications. *Id.* ¶ 3, 601 N.W.2d at 611. The taxpayer then used the samples to conduct the research for the customers and then transferred the samples to the customers along with the final report. *Id.* The taxpayer did not pay sales tax on the purchase of the samples, and the Department assessed use tax. *Id.*

We reversed, holding that the samples were not subject to use tax as they were purchased for incorporation into the final product and sold in the ordinary course of business. *Id.* ¶ 14, 601 N.W.2d at 614.

[¶24.] Robinson is distinguishable for several reasons. First, a sale requires a change in ownership of some sort. The shop supplies taxed by the Department (sandpaper, razor blades, etc.) never changed ownership. They do not become part of the vehicle and are not an "inextricable part of the finished product" but are consumed in the repair process. Additionally, Taxpayers do not purchase these supplies with any particular customer's needs in mind, whereas the taxpayer in *Robinson* provided a product tailored to each customer's specific needs. With reference to the other category of shop supplies such as "sealants, grease and caulk," Taxpayers argue these items are part of the finished product. This argument is moot because these items in this context were not taxed.

[¶25.] 3. *Taxpayers' customer invoice.*

[¶26.] Nonetheless, Taxpayers claim that a "sale" of the shop supplies occurs because they entered into a contract with their customers for the sale of the supplies. To support this argument, Taxpayers rely on the language of the invoice with their customers, which indicates a fee for shop supplies. It is immaterial that the Taxpayers' invoices purport to charge the customer for supplies. This contract is simply a business practice used by Taxpayers to recoup the costs of the supplies. There is no "sale" as contemplated by SDCL 10-45-1(12) for any of the goods Taxpayers argue were wrongfully assessed. Regarding supplies *consumed* in the repair process, the customers never obtain any right to the supplies. Furthermore,

Taxpayers cannot contract around the law of use tax; thus, it is immaterial that Taxpayers invoiced customers for these supplies. *See* SDCL 53-9-1 ("A contract provision contrary to an express provision of law or to the policy of express law, though not expressly prohibited or otherwise contrary to good morals, is unlawful.").

[¶27.] 4. *Double Taxation.*

[¶28.] Lastly, Taxpayers argue that the Department's assessment of use tax on Taxpayers' purchase of the shop supplies results in double taxation. Taxpayers argue that this Court has previously rejected application of use tax and sales tax to the same transaction. *See Butler Mach.*, 2002 S.D. 134, ¶ 15, 653 N.W.2d at 761 ("As to the issue of double taxation, we have long held that the sales tax and the use tax are meant to be complimentary and should not both be used to tax the same transaction.").[7] However, in this case, there are two separate transactions involved, and each is taxed separately. The first transaction occurs when Taxpayers purchase the supplies without paying sales tax. Accordingly, the Department assessed use tax under SDCL 10-45-5 when Taxpayers used and consumed the supplies during repair services. The second transaction occurs when the customers purchase repair services. Sales tax is assessed on the total value of the service. Our past holdings are only implicated if use tax and sales tax are applied to the same transaction.

---

7.    While we acknowledge this holding, we also emphasize that there is no constitutional prohibition against double taxation. There are several instances where double taxation is permitted, including alcohol and tobacco, where an excise tax is combined with a sales tax. *See* SDCL 35-5-2 (alcohol excise tax), SDCL 10-50-3 (tobacco excise tax), SDCL 10-45-2 (general sales tax).

## Conclusion

[¶29.]     The hearing examiner did not err when it affirmed the Department's refusal to consider Exhibit 18.  The hearing examiner also did not err when it affirmed the Department's certificate of assessment of use tax due and owing on transactions where shop supplies, purchased without payment of sales tax, were used and consumed.

[¶30.]     Affirmed.

[¶31.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON and WILBUR, Justices, concur.